Argued January 31; reversed February 14, 1940

# OREGON LIQUOR CONTROL COMMISSION *v.* COE ET AL.

(99 P. (2d) 29)

In Banc.

*S. J. Bischoff*, of Portland (Bischoff & Bischoff, of Portland, on the brief), for appellants.

*L. S. Ferris*, of Portland (Boyd & Ferris, of Portland, on the brief), for respondent.

KELLY, J.  During the time involved in this case, defendants were in business at Bingen in the state of Washington, and were engaged in the wholesale distribution of beer and other alcoholic liquors.

In its complaint, the commission, after alleging that defendants were partners and engaged in business as above stated; and that the Oregon Liquor Control

Commission was and is an instrumentality of the State of Oregon created and existing under the provisions of the Oregon Liquor Control Act, Oregon Laws 1933, Second Sp. Sess., p. 38, further alleges:

"That between the said 1st day of June, 1934, and the 30th day of April, 1936, the said defendants imported, sold and distributed certain malt beverages, to-wit: beer, within the State of Oregon, and by reason thereof became indebted to the plaintiff for privilege taxes thereon, penalty and interest, as provided by the Oregon Liquor Revenue Act, in the sum of seven hundred fourteen and 20/100 dollars ($714.20), privilege tax, and the further sum of seventy-one and 41/100 dollars ($71.41), ten per cent. penalty thereon, and the further sum of eighty-six and 57/100 dollars ($86.57), interest thereon at the rate of one per cent per month from the date when said privilege tax became due until the 10th day of August, 1936, all of which is set forth in an itemized statement hereto attached, marked 'Exhibit A', reference to which is hereby made and the same is hereby referred to and included herein the same as if fully set forth herein."

"That said defendants have failed, refused and neglected to pay said privilege tax, penalty and interest, or any portion thereof, and there is now due, owing and payable from said defendants, and each of them, to the said plaintiff the sum of eight hundred seventy-two and 18/100 dollars ($872.18)."

Issue was joined by answer of defendants, without the interposition of any motion or demurrer attacking plaintiff's complaint.

In their answer, defendants admitted that at all times mentioned in plaintiff's complaint, defendants were copartners doing business under the partnership name and style of Norcoe Distributing Company, with their principal office and place of business in the city of Bingen, state of Washington. All of the other alle-

gations of plaintiff's complaint were denied in defendants' answer.

The cause was tried to the court without a jury and judgment in favor of plaintiff was rendered as demanded in plaintiff's complaint, said complaint having been amended by interlineation to include interest accruing after the filing of plaintiff's complaint up to the date of the trial of said cause.

Six alleged errors are assigned by defendants. Four of these assignments challenge the sufficiency of plaintiff's complaint, and are the basis of defendants' contention that the record fails to support the judgment rendered herein.

In support of the first assignment defendants argue that in its complaint plaintiff should have alleged that the beer in suit was manufactured out of the state of Oregon; also that facts should have been averred showing that such beer did not have the status of interstate commerce; that it should have been alleged that defendants were first in possession after the completion of the act of importation and also that the beer had not been sold more than once.

As a basis for the second assignment of error defendants urge that the Oregon Liquor Control Commission had no authority to maintain an action in its own name for the recovery of privilege taxes. Inasmuch as the complaint discloses that the commission is plaintiff, it is insisted by defendants that the complaint is fatally defective.

The third assignment presents the question whether this action may be prosecuted by private counsel instead of the attorney general or some district attorney. The complaint is not signed by the attorney general or

any district attorney; and defendants contend that for that reason it is fatally defective.

The fourth assignment is to the effect that it is not alleged or shown that defendants were manufacturers or importing distributors within the meaning of the privilege tax act.

Assignments five and six present defendants' contention that reversible error was committed by the trial court, (5), in holding that all of the beer sold by defendants to Oregon retail distributors was subject to the payment of a privilege tax; and (6), in admitting in evidence the audit or summary, exhibit 1, and the evidence of witness Morgan based thereon.

In support of the first assignment of error, defendants rely upon the case of *Oregon Liquor Control Commission v. Anderson Markets*, 160 Or. 646, 87 P. (2d) 206. In that case a demurrer to plaintiff's complaint was interposed, and this court, speaking through Mr. Chief Justice RAND, held that a complaint in an action to enforce payment of a tax on malt syrups imported in the state and sold by defendant was had on demurrer in the absence of an allegation that such syrups were not used for medicinal or commercial baking purposes.

As stated, in the instant case, no demurrer to plaintiff's complaint was interposed. The rule of construction to be applied in testing a complaint by demurrer is stricter than when issue on the facts is joined by an answer and thereafter the sufficiency of the complaint is challenged.

The determinative distinction between the Anderson Markets case and the case at bar is apparent when the statute is considered which authorizes the imposition of a tax upon the privilege of engaging in business as a

manufacturer or as an importing distributor. Section 2, chap. 46, p. 138, Oregon Laws Second Special Session 1933.

We quote the first sentence of said section 2:

"A tax hereby is imposed upon the privilege of engaging in business as a manufacturer or as an importing distributor of alcoholic beverages at the rate of 62 cents per barrel of thirty-one gallons on all malt beverages containing not more than 4 per cent of alcoholic content by weight, and $1 per barrel of 31 gallons on all malt beverages of higher alcoholic content, and at the rate of 10 cents for each 3-pound container or less on all malt syrups used for other than medicinal or commercial baking purposes, and at the rate of 25 cents per gallon on all alcoholic beverages as defined in section 1 of this act."

It is plain from the foregoing excerpt of the statute that the only tax therein authorized upon malt syrups is upon those used for other than medicinal or commercial baking purposes. As stated, in the Anderson Markets case, supra, this limitation is not in the form of a proviso, but is an exception upon the power to tax. No such exception is applied to malt beverages.

All of the matters embraced in defendants' first assignment are governed by provisos as distinguished from exceptions.

In the Anderson Markets case, Mr. Chief Justice RAND quotes Phillips Code Pleading (2d Ed.) Sec. 295. The writer ventures to repeat:

"In actions under favor of a statute containing an exception, as distinguished from a proviso, the complaint should show affirmatively that the case does not fall within the exception. A proviso, on the other hand, is a matter of defense, and need not be negatived in the complaint. Exceptions and provisos are alike in this, that they both exempt something from the operation of the statute; they differ in this, that an excep-

tion exempts absolutely from the operation of the statute, while a proviso generally defeats the operation of the statute conditionally  *  *  *''

The matter, which defendants mention, being controlled by provisos as distinguished from exceptions, constitutes defensive matter which should be affirmatively pleaded; and, hence, it was not necessary to negative it in plaintiff's complaint.

■ As to the authority of plaintiff to maintain this action, we think that such authority is plainly implied in. the express terms of the statute. We refer to the following statutory provision:

"The function, duties and powers of the commission shall include the following:

"*  *  *  To collect taxes and duties imposed by this act, or other acts relating to alcoholic liquors, *  *  *''

"To exercise all other powers, duties and functions conferred by this act and all powers incidental, convenient or necessary to enable it to administer or carry out any of the provisions of this act." Oregon Laws 1933, Second Special Session, p. 42, as amended by Oregon Laws 1935, chap. 428, p. 764.

We also have reference to the following provision of the statute:

"The commission shall be vested with and possessed of the powers and duties in this act specified, and also the powers necessary or proper to enable it to carry out fully and effectually all the purposes of this act. The jurisdiction, supervision, powers and duties of the commission herein created and established shall extend under this act to any person or persons, association, firm or corporation which hereafter shall buy, sell, manufacture, import or transport any alcoholic liquor containing over one-half of 1 per cent of alcohol by volume, within the state of Oregon, and said commis-

sion may sue and be sued.'' Section 5 of chap. 17, Oregon Laws 1933, Second Special Session.

The purpose of and the rule of construction to be applied to the Oregon liquor control act, under which the Oregon Liquor Control Commission, plaintiff herein, was created, is expressly stated thus:

"This act shall be deemed an exercise of the police powers of the state, for the protection of the safety, welfare, health, peace and morals of the people of the state; to prevent the recurrence of abuses associated with saloons or resorts for the consumption of alcoholic beverages; *to eliminate the evils of unlicensed* and unlawful manufacture, *selling* and *disposing* of such beverages and to promote temperance in the use and consumption of alcoholic beverages; and it hereby is declared that the subject-matter of this act involves in the highest degree the economic, social and moral well-being and the safety of the state and all its people, and by reason thereof is a necessary subject for immediate general legislation operating uniformly throughout the state; and all provisions of this act shall be liberally construed for the accomplishment of these purposes." (Italics supplied.) Oregon Laws 1933, Second Special Session. chap. 17, sec. 2, p. 38; Sec. 15-1002, Oregon Code Ann. Supplement 1935, Vol. 5, pp. 255-256.

These statutory provisions impliedly grant to the plaintiff authority to institute and prosecute this and similar actions.

It cannot be said that the plaintiff had no justiciable interest in the chose in action herein. The cities and counties of the state also have an interest therein. Thirty cents of every one dollar and thirty cents of revenue derived from the tax imposed upon manufacturers and importing distributors of malt beverages shall be remitted to the state treasurer to be placed in a special fund to the credit of the cities and counties of the state, the remainder of such revenue, together

with all other revenue derived from said act shall be remitted to the state treasurer, who shall deposit it in the general fund to the credit of plaintiff's account. All the necessary expenses of the commission, and such sums as are necessarily required in making purchases in carrying out the purposes of the act under consideration, constitute, are considered as, and are made an appropriation from the general fund for such purposes. Oregon Laws 1939, chap. 247, pp. 487, 488. And in 1939 an appropriation not in excess of $6,500,000 was made from the fund to the Public Assistance Fund. Oregon Laws 1939, chap. 401, sec. 1, p. 815.

We think that the commission was and is authorized to maintain this action. The specific provisions of the statute authorizing registration, etc., afford cumulative remedies and are not exclusive.

As to the right of the commission to retain private counsel to conduct this litigation, we believe that the weight of authority is to the effect that objection must be made to such a course at the outset (in limine) otherwise it is waived.

As stated by Mr. Justice Lusk during oral argument of this case, there are federal holdings to the contrary. *Sutherland v. International Insurance Company of New York*, 43 Fed. (2d) 969; *Sutherland v. International Ins. Co. and Hamburg Assurance Co.*, ibid, p. 972; *Sutherland v. American Equitable Assurance Co.*, ibid, p. 973.

In the case first above cited to this point, it is stated that—

"Courts have generally, however, insisted that the defendant must raise the point in limine; sometimes at the term at which process is served, and at any rate before answer. This in turn is because, if, being advised of his situation, the defendant is content with the hazard, he cannot later repudiate his acceptance. It is not

necessary to do more than enumerate some of the many decisions which have so held, King of Spain v. Oliver, Fed. Cas. No. 7814; Rogers v. Crommelin, Fed. Cas. No. 12,009; Rouiller v. A. & B. Schuster Co. (D. C.) 212 F. 348, Cochran v. Leister, 2 Root (Conn.) 348; Spaulding v. Swift, 18 Vt. 214; Norwood v. Dodge, 215 Mass. 351, 102 N. E. 412 (by rule of court); Upham v. Bradley, 17 Me. 423 (semble); Lucas v. Bank of Georgia, 2 Stew. (Ala.) 147; Chamberlain Miller & Co. v. Abbott, 152 Ala. 243, 44 So. 637; Noble et al v. Bank of Kentucky, 3 A. K. Marsh. 262 (semble) Gianakaris v. Hines, 273 Pa. 21, 116 A. 524; State v. Edwards, 315 Mo. 209, 286 S. W. 25; Mercier v. Mercier, 2 Dall. (Pa.) 142, 1 L. Ed. 324; State v. Harris, 14 N. D. 501, 105 N. W. 621; Indiana B & W. Ry. Co. v. Maddy, 103 Ind. 200, 2 N. E. 574; Rowland v. Gardner, 69 N. C. 53. In Dehn v. Dehn, 170 Mich. 407, 136 N. W. 452, the rule was so far relaxed as to allow the point to be raised at trial, when defendant first discovered it at that time. These cases, with one or two exceptions arose between private persons, where the general interest was not at stake. Certainly, when the sovereign is a party other considerations may be pertinent, and it might well be held that the defendant cannot by inaction excuse a breach of the law, or authorize a suit in the sovereign's name which he has forbidden. Yet the Supreme Court of New York, when made up of exceptionally learned and experienced judges, ignored any such distinction. (People v. Dennison, 17 Wend. 312, 314), and this was later followed by the General Term (People v. Lamb, 85 Hun. 171, 32 N. Y. S. 582).''

In the case above quoted, the conclusion to approve the course taken by the trial court in permitting the question to be presented after issue joined on the facts by means of a motion to dismiss for the reason that plaintiff was without authority to employ private counsel to conduct the case, is based upon the following language of the supreme court of the United States:

"Whether, as a matter of practice, the challenge to the authority of counsel was seasonably interposed," [as the court had just said it was, it being raised with defendants' answer] "it is not important to decide, for in any event the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear." *Pueblo of Santa Rosa v. Fall*, 273 U. S. 315, 316, 47 S. Ct. 361, 71 L. Ed. 658.

■ In the case at bar, the question was first presented by objection to the introduction of any testimony by or in behalf of plaintiff. Defendants' answer was filed December 21, 1937, and the case was called for trial on the 17th day of October, 1938. We think that the question was not seasonably presented and hence it was waived.

Out of deference to the distinguished jurist, Judge Learned Hand, who rendered the Sutherland opinions, and because he quotes from our highest tribunal, we will treat the question as having been seasonably presented.

Defendants cite subdivisions d and e of section 13 of the Privilege Tax Act in support of the argument that the attorney general should prosecute the instant case.

Subdivision d provides for the immediate transmittal by the commission to the attorney general of notice of delinquency on the part of a manufacturer in the payment of the prescribed privilege tax, and for the collection by the attorney general of all sums due to the state from any such manufacturer by bringing suit against the necessary parties to effect forfeiture of the bond or bonds of the manufacturer, and by reducing any deficiency to judgment against the manufacturer.

Subdivision e provides that the foregoing remedies, which include the remedy prescribed in subdivision d, shall be cumulative and that no action taken by the commission or attorney general shall be or be construed to be an election on the part of the state, or any of its officers, to pursue any remedy under the provisions of the act under consideration to the exclusion of any other remedy for which provision is therein made.

These provisions of the statute cannot be construed as requiring the attorney general to prosecute every civil action in which the state is concerned or even all those in which the Oregon Liquor Control Commission is concerned.

It will be noted that the statutory authority, upon which Judge Hand based his opinion, that no suit can be brought in which the United States are concerned, unless the attorney general, his subordinate, or a district attorney under his superintendence and direction appears for the United States, expressly declares:

"The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought." Section 310, title 5, ch. 5, U. S. C. A.

And also,—

"The Attorney General shall exercise general superintendence and direction over the attorneys and marshals of all the districts in the United States and the Territories as to the manner of discharging their respective duties; and the several district attorneys

and marshals are required to report to the Attorney General an account of their official proceedings, and of the state and condition of their respective offices, in such time and manner as the Attorney General may direct." Section 317, ibid.

We are not aware of any similar statutory provision in this state concerning the duties and authority of the attorney general. Certainly, subdivisions d and e of section 13 of the Privilege Tax Act are not within that category.

*The Claim of L. B. Ison*, 6 Or. 465, is cited by defendants to this point. This case should be considered in the light of Hazard's Appeal, 9 Or. 366. Mr. Justice WATSON wrote the opinions in these cases. In the Ison case, the state of Oregon was a party to the record. In the Hazard case the state of Oregon was not a party to the record. That is the only distinction between these two early Oregon cases. *Butterfield v. State Industrial Acc. Com.*, 111 Or. 149, at p. 158, 226 P. 216. There is the same distinction between the instant case and the Ison case.

*Baskin v. Marion County*, 70 Or. 363, 141 P. 1014, holds that the district attorney, being a law officer of the state, must sign a notice of appeal by a county in order to give the appellate court jurisdiction of such appeal. No county is a party to the case at bar.

The case of *Gibson v. Kay*, 68 Or. 589, 137 P. 864, cited by defendants, holds that the corporation commissioner had no authority to employ an attorney to conduct litigation for the state in which the state is interested, but should submit such matters to the attorney general or district attorney.

An examination of the statute creating the office of corporation commissioner [General Laws of Oregon

1913, chap. 341, p. 668.] discloses that such officer is not vested with the authority to sue and be sued; the net revenue derived from the corporation department belongs in its entirety to the state; and the commissioner was not given plenary authority necessary and proper to carry out the provisions of the statute; while, as stated, the net revenue from the licensing and sale of liquor to the extent of $6,500,000 has been credited to the Public Assistance Fund. [Oregon Laws 1939, chap. 401, section 1, p. 815.] The liquor commission is expressly authorized to sue and be sued: and it is expressly given plenary power and authority necessary or proper to carry out fully and effectually all the purposes of this act. [Section 5, chap. 17, Oregon Laws 1933, Second Special Session; section 15-1005, Oregon Code Ann. Supp. 1935; Section 3, chap. 448, Oregon Laws 1937.]

We think that the doctrine of *Gibson v. Kay*, supra, is not controlling in the instant case.

The doctrine of the case of *State ex rel. Taylor v. Lord*, 28 Or. 498, 43 P. 471, 31 L. R. A. 473, also cited by defendants, is that the mere signature of the attorney general or other law officer, in his official capacity, to a bill or complaint, shown to be that of a private relator, is not sufficient to invoke the action of the courts thereupon. The authority of a commission such as plaintiff is not discussed.

*State v. Gattavara*, 182 Wash. 325, 47 P. (2d) 18, refers to the constitutional provisions declaring that—

"The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law:" [Art. III, sec. 21, Constitution of Washington].

construes the following provisions of the Laws of Washington, 1929, chap. 92, p. 177, namely:

"Sec. 3. The attorney general shall have the power and it shall be his duty; * * *

"2. To institute and prosecute all actions and proceedings for, or for the use of the state which may be necessary in the execution of the duties of any state officer; * * *

"Sec. 4. It shall be the duty of the attorney general * * *

"To enforce the proper application of funds appropriated for the public institution of the state, and to prosecute corporations for failure or refusal to make the reports required by law."

and also invokes the provision of section 7697, Rem. Rev. Stat., relating to the department of labor and industries, which reads:

"The attorney general shall be the legal adviser of the joint board and shall represent it in all proceedings."

Oregon has no statutory provisions expressly prescribing that the attorney general shall be the legal adviser of the liquor commission and shall represent it in all its proceedings. On the contrary, the Oregon commission is expressly authorized by statute to appoint attorneys. Section 2, chap. 448, Oregon Laws 1937, p. 740.

Another distinction between the instant case and the Washington case is that the case at bar is not instituted in the name of the state.

For these reasons, we hold that no reversible error was committed in overruling defendants' objection to the introduction of testimony.

As stated, the contention is urged by defendants that there is no proof that the defendants were manufacturers within the meaning of that term as employed in the statutes.

■ The privilege tax act defines the word, manufacturer, as therein used, as every person who within the state of Oregon produces, brews, ferments or manufactures an alcoholic or malt beverage, or who in the case of an alcoholic or malt beverage produced, brewed, fermented or manufactured outside of the state of Oregon, is the first in possession thereof after the completion of the act of importation into the state. Subdiv. e, section 1, chap. 46, Oregon Laws 1933, Second Special Session.

Defendants are charged with importing and distributing the malt beverages in suit. They contend that they are not shown to have been manufacturers within the foregoing statutory definition thereof. Their position is that only the recipient from them of the beer could be said to be the first in possession thereof after the completion of the act of importation. We are unable to concur in this view.

"The word 'importing', as used in the statute, is to be given its customary meaning. In this connection it means the bringing of merchandise into the state from some point outside the state, as opposed to the exporting of merchandise from the state." [Mr. Chief Justice Rand in *Oregon Liquor Commission v. Anderson Markets*, supra.]

*State v. Williams*, 146 N. C. 618, 61 S. E. 61, 68, 17 L. R. A. (N. S.) 299, 14 Ann. Cas. 562; *State ex rel Porterie v. Gulf, Mobile & N. R. Co.*, 191 La. 163, 184 So. 711, 715; *State v. Fidelity & Deposit Company of Maryland*, 194 Wash. 591, 78 P. (2d) 1090, 1092.

During the trial, it was stipulated that defendants sold and delivered the beer in suit from Bingen, Washington, to customers in Oregon, and that defendants delivered the beer in their own equipment to the points of delivery in the state of Oregon. Upon crossing the

state boundary coming into Oregon, the act of importation was complete and defendants were then in possession, and as to beer not theretofore brought into the state of Oregon, defendants were necessarily the first in possession of the imported beer, after the completion of the act of importation into the state.

■ Defendants take the position that because some of the beer, though manufactured in Washington, had been brought into Oregon, and thereafter delivered to defendants at their place of business in Bingen, Washington, defendants could not be required to pay a license tax for importing it again into the state of Oregon. Defendants urge that the original importer alone could be charged with such a tax. With this contention we agree. The sufficiency of plaintiff's complaint is not affected thereby, but only the amount of plaintiff's recovery.

In considering the question of the admissibility of plaintiff's exhibit 1, it is essential that the record be understood upon which that exhibit was received in evidence. Mr. Russell B. Morgan, an auditor for the state's office division of audits, testified that he was in the employ of the secretary of state in the Division of Audits. We quote from his testimony: ·

"Q. And the Division of Audits, your office has what to do with the auditing of privilege taxes due the Oregon Liquor Control Commission?

\* \* \* \* \*

A. The office acts as auditor for the Oregon Liquor Control Commission, by assigning certain members of the auditing division staff to report on privilege taxes paid on certain other information if requested by the Oregon Liquor Control Commission.

\* \* \* \* \*

Q. And you make your reports to the Division of Audits, which in turn reports to the Oregon Liquor Control Commission?

A. Yes.

Q. And are the taxes collected by the Oregon Liquor Control Commission on the basis of your audits?

A. That is true.

\* \* \* \* \*

Q. As a matter of fact, your Division of Audits, the Secretary of State's office, it is your duty to audit these returns made by wholesalers of privilege taxes due the State of Oregon, is it not?

A. That is true.

\* \* \* \* \*

Q. In connection with your audit of this defendant's accounts, what is your first step as to an audit to ascertain the amount of tax due?

A. We go to the head office of the Oregon Liquor Control Commission in Salem, to their accounts receivable records and take off a list of all payments by the individual to be audited, or the firm to be audited, and obtain all reports made by that individual.

Q. And did you do that in this instance?

A. That is right, we did.

The Court: That is one of your duties, to go to that office?

The Witness: That is true.

\* \* \* \* \*

Q. And you found no report made by the defendant?

A. None at all.

Q. And no payment made by the defendant of any privilege tax.

A. No payment made by the defendant of any privilege tax, none.

Q. Covering any of the periods of time that is subject of this action?

A. No report made for this period.

Q. Did you also examine the records of the defendant in that respect?

A. We did.

    \*   \*   \*   \*   \*

Q. Now from your examination of their books and sales records, bank accounts and so forth, are you able to testify as to the sales of malt beverages, beer, to be specific, which they made in the State of Oregon between June, 1934, and April, 1936?

Objection being interposed, the court asked counsel for plaintiff:

"The Court: I suppose that you are in a position to produce the records?

Mr. Flegel: They are their records, Your Honor.

The Court: Did you audit their books?

A. Yes, I audited their books, that is true.

The Court: In the presence of the defendants?

A. Mr. Coe wasn't there most of the time, as I recall it, he was quite busy during that season and he was only there one or two days during the course of the audit. The office girl was there all the time and she supplied me with such records as I requested and which were available.

The Court: These results of your investigation that you are now referring to were taken from the books, —I mean that was the result of your investigation of their books?

A. That is true.

    \*   \*   \*   \*   \*

The Court: Was that information gained out of books which Mr. Coe or some of the firm turned over to you—you were working on books which Mr. Coe or some member of that partnership authorized you to investigate?

A. That is true.

    \*   \*   \*   \*   \*

Q. Now, take your audit by the month—

Mr. Bischoff: (Interrupting) May it please the court, we want to make further objection as to that evidence upon the ground that it appears that an audit was made and filed as the result of his activities, and that, in any event, would be the best evidence.

Mr. Flegel: I think it would save a lot of time if we offered this audit directly in evidence. I have some markings on this one that are some pencil computations of my own.

Mr. Bischoff: I don't care about that.

Q. I will hand you what purports to be an audit of the privilege tax of Norcoe Distributing Company from June 1st, 1934 to April 30th, 1936, and ask you if you recognize that document?

A. That is the report.

Q. This is the report that you prepared.

A. Yes.

Q. And referring to exhibit A-1 on page 4, will you explain that exhibit to the court please?

Mr. Bischoff: Your Honor, it hasn't been received in evidence and I don't know any evidence as to its contents would be admissible now.

Mr. Flegel: Well, I offer it.

Mr. Bischoff: I would like to ask a few preliminary questions before Your Honor rules on that?

The Court: You may

Cross-examination. Questions by Mr. Bischoff:

Q. Mr. Morgan, did you actually prepare that entire report yourself,—I mean by that, dictate it and sign it and file it?

A. It is prepared from a written copy.

Q. I mean did you do that preparation?

A. Yes, I did.

Q. Dictated the contents of that report?

A. It was copied from a written copy that I prepared.

Q. It purports to be a copy of what you had written out?

A. Yes, a copy of what I had written out.

* * * * *

Q. I call your attention to page 3 of that report referring to the last sentence under the heading of 'Assistant Auditor. This audit was made with the assistance of Russell B. Morgan, Auditor, Division of Audits, Yours very truly, S. W. Starr, Certified Public Accountant and Supervisor, Division of Au-

dits.' Do you still say you prepared this report?

A. That is true, he signs as head of the department.

Q. Is this statement the truth, that the audit was made with your assistance?

A. Well, I think it is true in the sense it is meant there, I don't know whether that would be evidence or not, but all the Division of Audits are the assistants, we are the assistants of the Division of Audits, or of the Secretary of State.

Q. Did Mr. Starr do any of the work and make the examination which resulted in this report?

A. No, he merely reviewed the report and passed on it.''

\* \* \* \* \*

■ The report was then received in evidence over the objection of defendants.

Three grounds are urged in support of defendants' contention that error was committed by receiving this report in evidence.

1. The audit was not admissible in evidence, because the records upon which it was based were not produced in court so that the witness could be cross-examined thereon.

2. The audit and testimony given in connection therewith were inadmissible because they were based upon and made up from books, records and documents which did not belong to the defendants and which were not binding upon them, and in part were based upon presumptions, erroneous legal conclusions and inferences.

3. The audit was not admissible because not made by the witness Morgan, but by someone else who was not produced in court for cross-examination.

The first ground is untenable because the records upon which the audit is based were under the control, if not in the actual possession, of defendants.

The second ground is likewise untenable for the same reason and for the further reason that it will be presumed that any incompetent testimony which may have been elicited was disregarded by the learned judge of the trial court.

The third ground is not supported by the record as a matter of fact.

Again referring to the beer imported by defendants, after it had been brought into the state of Oregon once before by the companies that brewed it, and by such companies sold to defendants and sent to their place of business in Washington, we find but two instances of that character disclosed by the record. One of these was with respect to beer manufactured in Seattle, Washington, by the Seattle Brewing & Malting Company and known as Rheinlander beer. The other was that of beer brewed by the Northwest Brewing Company known as the Marinoff beer. No recovery was sought herein and none awarded as to the Marinoff beer.

It is disclosed in the record that the commission treated beer which had been brought into Oregon for storage as being in transit and no privilege tax was sought to be enforced thereon until it was sold.

Section 3 of the original privilege tax act took into account the question whether the beverage had been sold, and prescribed that it would be presumed to have been sold, unless the manufacturer established to the satisfaction of the commission that it was still in the ownership and possession of such manufacturer and had not been lost through evaporation, leakage or destruction of the elements. Section 3, chap. 46, Oregon Laws 1933, Second Special Session. Upon such a showing, the course taken by the commission in treating such beer as in transit was proper. Later this exemption

of the importing brewer from the privilege tax until a sale or other final disposition of the import has been made was deleted from said section 3 by amendment. Section 3, chap. 427, Oregon Laws 1935, p. 756.

The 1933 act provided that payment to the state of the privilege tax should not be required upon more than one sale of the same beverage. The act of 1935 prescribed that payment of such tax should not be required more than once upon the same beverage.

The statute plainly states that in the case of alcoholic or malt beverages manufactured outside of the state of Oregon, the word manufacturer means the one who is the first in possession thereof after the completion of the act of importation into the state.

As to the beer purchased by defendants of the Seattle Brewing & Malting Company which had been brought into Oregon first by the brewing company, it cannot be said the defendants were first in possession after such importation. The Seattle Brewing & Malting Company were first in possession; and, even under the original statute, such company could not say that it was not a manufacturer liable to the privilege tax because it appears that not only was the beer brought into Oregon by that company, but it was also sold by the brewing company. As to that beer defendants were not chargeable with a privilege tax. This fact constituted defensive matter and if sought to be proved by defendants, should have been pleaded; but appearing in plaintiff's case in chief it is controlling upon the court.

We are unable to determine from the record the amount of the Rheinlander beer sold by the Seattle

Brewing & Malting Company to defendants that had been first imported into Oregon by the Seattle company, and for that reason the judgment of the circuit court must be reversed and the cause remanded for such further proceedings as are not inconsistent herewith.

BEAN, J., not sitting.