FRANK EATON

*v.*

COUNTY COURT OF CABELL COUNTY, *et al.*

(No. 10716)

Submitted January 12, 1955. Decided February 1, 1955.

*Okey P. Keadle, L. A. Shawkey,* for relator.

*Philip P. Gibson, Will H. Daniel, Robert H. Burford,* for respondents.

RILEY, JUDGE:

Invoking the original jurisdiction of this Court, the petitioner, Frank Eaton, the duly nominated candidate of the Republican Party for the office of Judge of the Domestic Relations Court of Cabell County, instituted this proceeding in mandamus against the County Court of Cabell County, West Virginia, a corporation, and James M. Donohoe, president of the county court, and Frank Heiner and C. V. Updyke, commissioners of the county court, acting as the Board of Canvassers of Cabell County, and William W. Roberts, the nominee of the Democratic Party for the office of Judge of the Domestic Relations Court of Cabell County, in which the petitioner seeks to require the County Court of Cabell County to reconvene as a board of canvassers and permit petitioner to inspect the precinct election records pertaining to all votes cast at the election held on November 2, 1954, in all of the precincts of Cabell County, and prays that such inspection be unhampered by the board of canvassers, except as to such regulations as it may make as to the time, place and circumstances; and that upon a hearing upon the rule, prayed for by the petitioner in his petition, a writ of mandamus be awarded requiring the board of canvassers to reconvene as such, and to permit an inspection of all precinct records and to recount the votes cast at the election in the light of such further motions and proceedings as the petitioner may desire to make as a result of such inspection.

The petition alleges that at the time provided by law the board of canvassers proceeded to canvass the votes cast at the election, and, at the conclusion of the tabulation, the board of canvassers disclosed that according to the results on the voting machines and the challenged ballots cast at the election, the petitioner received 17,906 votes, and the respondent, William W. Roberts, received 17,936 votes; and thereupon, while the board of canvassers was sitting on November 23, 1954, the petitioner filed a demand for a recount of all ballots cast at the election, and on the following day, that is November 24, 1954, the respondent, William W. Roberts, also filed a demand for a recount of

all of such ballots. The petitioner and respondent Roberts, having filed bond, as required by the board of canvassers, the board entered an order granting the recounts, and setting them to begin on December 6, 1954.

The petition further alleges that on December 9, 1954, the day to which the recount was passed by agreement of the parties, the board of canvassers proceeded to make the recount. At the beginning of the recount the petitioner requested that all the returns of the election be placed before the board of canvassers, and that petitioner and his attorneys be permitted to examine all the returns, and in particular all the poll books of each of the precincts and the registration records for each of the precincts, for the purpose of securing information therefrom which might have a bearing on the validity of the votes cast at such election, which motion was overruled by the board of canvassers by a vote of two to one, the president of the board, James M. Donohoe, and commissioner C. V. Updyke voting to overrule the motion, and commissioner Heiner voting to sustain the motion. In announcing their vote on the motion, the majority members of the board of canvassers stated that it was their purpose to conduct the recount only as to challenged votes and to permit inspection of the poll books and precinct registration records and other returns of the election only as to persons who voted challenged ballots, and to refuse such examination and inspection with relation to any other voters in the county.

The petition further alleges that at the election held on November 2, 1954, there were only 178 challenged ballots in Cabell County, out of a vote of 35,842 votes, and that of 132 ("131") precincts in the county there were only fifty-five precincts in which there were no challenged votes. It is further alleged in the petition that approximately one-half of the recount, limited in scope as heretofore set forth, was completed on December 9, 1954, and that when the board of canvassers reconvened on the morning of December 10, 1954, the petitioner, by counsel, renewed his motion that he be permitted to examine the

returns of the election, and invited the board of canvassers' attention to the decision of this Court in *Brawley* v. *County Court of Kanawha County,* 117 W. Va. 691, 187 S. E. 417, but the board of canvassers by the same divided vote, as was had on the original motion, overruled the motion and adhered to its former ruling.

The petition further alleges that after the board of canvassers had completed its examination and recount of the challenged ballots on the afternoon of December 10, 1954, the petitioner renewed his request as to examination of the election returns, and objected to the board of canvassers concluding its recount and issuing a certificate of result without an opportunity having been afforded to petitioner to examine the election records, as requested by him, which motion was overruled by the board of canvassers by the divided vote which had prevailed on the previous motions; and thereupon the board of canvassers prepared and entered an order, signed by the president of the board, James M. Donohoe, and commissioner C. V. Updyke, finding that the respondent had received 17,936 votes, and the petitioner 17,906 votes, which order directed that a certificate of result be issued to the respondent, William W. Roberts, showing that Roberts had been elected to the office of Judge of the Domestic Relations Court of Cabell County.

The petitioner further alleges in his petition that it is his intention to contest the election, and to file a notice of contest within the time required by law; but before he can prepare a proper notice of contest it is necessary that he have an opportunity to examine the poll books, precinct registration records, and other returns of the election, so that he can obtain information upon which he can base specifications concerning the votes which petitioner will contend were improperly and illegally counted upon the returns of the election, in so far as the returns were inspected by the board of canvassers during the recount. Further petitioner alleges that he is advised and informed, and upon such advice and information alleges, that on such contest or upon a recount which is properly con-

ducted by the board of canvassers, the results of the election as now determined will be changed, and petitioner will be declared to be the duly elected Judge of the Domestic Relations Court of Cabell County. Finally, the petition alleges that petitioner is entitled to full, complete and unhampered inspection of all precinct election returns, subject to the right of the board of canvassers to exercise reasonable control thereof as to place, time and circumstances, and the refusal of the board of canvassers to grant such right of inspection is arbitrary, capricious and illegal.

The petition prays that a rule be issued, requiring the respondent members of the County Court of Cabell County to show cause why they should not be required to reconvene as a board of canvassers, and permit the inspection of the precinct election records pertaining to all votes cast at the election held on November 2, 1954, in all precincts of Cabell County, unhampered by the board of canvassers, except as to such regulations as the board may make relating to time, place and circumstances; and that upon a hearing upon the rule prayed for this Court award a writ of mandamus, requiring the board of canvassers to reconvene as such board of canvassers and permit such inspection of all the precinct election records, and to recount the votes cast at the election in the light of such further motions and proceedings as the petitioner may desire to make as a result of such inspection; and for general relief.

To the petition separate demurrers and answers were filed by the respondent, William W. Roberts, and by James M. Donohoe, as president and one of the commissioners of the said county court. The respondent, C. V. Updyke, on January 12, 1955, filed a motion to quash the rule in mandamus awarded as to him on the ground that his term of office had expired at twelve o'clock midnight on December 31, 1954. Thereupon, the petitioner filed a motion to substitute in the place of the respondent, C. V. Updyke, the name of James Ellis, who had been elected at the general election held on November 2, 1954, to the office of Commissioner of the County Court of Cabell County, and had

assumed office on January 1, 1955, upon the expiration of the term of office of respondent, C. V. Updyke; and on the same day the newly elected commissioner, James Ellis, answered the notice served upon him in this proceeding, in which he stated that he had no personal knowledge of the matters and things alleged in the petition, and prayed that, as a member of the county court, and as such a member of the Board of Canvassers of Cabell County for the judgment of this Court whether he is compelled to make any other and further answer to the petition.

The separate demurrers of James M. Donohoe, as one of the commissioners and president of said county court, and William W. Roberts, the successful candidate for Judge of the Domestic Relations Court of Cabell County, as shown by the certificate of result, signed by James M. Donohoe, president of the county court, and C. V. Updyke, commissioner, are based upon the sole ground that in the absence in the petition of any allegations of fraud in the conduct of the election held on November 2, 1954, or the mechanical failure of the voting machines, the Board of Canvassers of Cabell County is required to accept as final the returns of the election, as disclosed on the faces of the voting machines, and therefore the petition is insufficient in law. The separate answers of the respondents, Donohoe and Roberts, disclose that the board of canvassers in conducting the canvass, as well as the recount, considered and disposed of only 180 disputed ballots, consisting of 178 challenged ballots and 2 absentee ballots. On the basis of this disposition, the separate answers allege, as a result of both the canvass and the recount, that petitioner received a total of 17,906 votes, and the respondent, Roberts, a total of 17,936 votes, or a majority for the respondent, Roberts, of 30 votes. In their separate answers the respondents, Donohoe and Roberts, deny categorically that petitioner is entitled, as he prays in the prayer of his petition, to inspect and compare the 37,209 poll book signatures, as signed by each voter who cast a vote at the election held on November 2, 1954, with the signatures of such voters on the permanent registration cards; and deny that a

second recount or contest properly conducted would change the result which the board of canvassers arrived at on the recount, the scope of which was limited by the board, as hereinabove set forth and alleged in the separate answers.

Though the board of canvassers may, as counsel for petitioner suggest, have considered the results of an election on the canvass and recount as though one procedure, the fact remains that from the allegations of the petition it clearly appears that after the board conducted a canvass of the votes, consisting of the votes disclosed on the faces of the voting machines, and the absentee and challenged ballots, which absentee and challenged ballots, under Section 20 and Section 21, Article 5-a, Chapter 58, Acts of the Legislature, Regular Session, 1949, are cast by the use of printed ballots, the board of canvassers announced the result of the canvass, and thereupon petitioner, Eaton, as well as the respondent, Roberts, asked for a recount, upon the basis of which the board conducted the recount limited in scope as set forth in the petition and the separate answers of the respondents, Donohoe and Roberts.

So the question before us is whether on a recount of the votes cast in an election, in which voting machines are used, a candidate asking therefor is entitled to have considered all, or a part, of the election returns, including all the poll books, precinct registration records, and other returns of the election; or whether the recount may properly be confined to the facts as shown on the faces of the voting machines and the challenged and absentee ballots.

The precise question presented by the pleadings in this case is novel in this jurisdiction, and finds solution in the interpretation of the statutes providing for the adoption, acquisition, and use of voting machines in regular, special, and primary elections, and providing for the manner of holding elections wherein such voting machines are used, the canvass of the results thereof, and the conduct of recounts, read in connection with the general election laws of the State, in so far as those laws are applicable to elections conducted with the use of voting machines.

The statutes providing for the use of voting machines and the conduct of elections therewith, and the canvass of the results thereof, which incidentally impose penalties for violation of the statutes, are: Chapter 58, Acts of the Legislature, Regular Session, 1949, amending, Chapter 3, Code of West Virginia, 1931, as amended, by adding thereto a new article, Article 5-a; and Chapter 89, Acts of the Legislature, Regular Session, 1951. Chapter 58, Acts of the Legislature, Regular Session, 1949; and Chapter 89, Acts of the Legislature, Regular Session, 1951, are voluminous, and it is unnecessary to state all of the provisions of the statutes to determine the question before us.

Bearing most pertinently upon the powers of a board of canvassers in the conduct of a recount, involving the results of a political election, in which voting machines are in use under the provisions of the statute are: Sections 1, 2, 20, 21, and 32, Article 5-a, Chapter 58, Acts of the Legislature, Regular Session, 1949.

Section 1 provides: "Voting machines may be used for the purpose of registering or recording and computing votes cast in regular, special and primary elections, provided that the use thereof shall be governed by the terms, conditions, restrictions and limitations imposed by this article."

Section 2 provides that voting machines may be adopted for use in general, primary and special elections in any county by procedures prescribed in Section 2, and not otherwise.

Section 20 provides for absentee ballots, the recording and disposition thereof.

Section 21 provides for the casting of challenged ballots by use of official printed ballots "prepared under section twelve of article four of this chapter [Michie's West Virginia Code, 1949, Anno., 3-4-12] or section four of article five of this chapter [Michie's West Virginia Code, 1949, 3-5-4], and such ballot shall be received subject to sections twenty-five (a) and thirty-one (a) of article five [Michie's

West Virginia Code, 1949, Anno., 3-5-25a and 31a] or sections seventeen-b and eighteen-a of article four of this chapter [Michie's West Virginia Code, Anno., 1949, 3-4-17b and 18a]."

Section 32 provides, in part: "Except as modified by this article, the general laws applying to regular, special and primary elections shall apply to elections conducted with the use of voting machines."

Pertinent also to the decision of this case are Sections 25 and 26, Article 5-a, Chapter 89, Acts of the Legislature, Regular Session, 1951.

Section 25 provides, in part:

"(1) The voting machines shall remain locked against voting during the canvass of the returns of the election and for a period of seven days after the canvass is finally concluded, during which time any candidate or the chairman of any county executive committee of any political party or their appointed representatives, shall be permitted to examine the voting machines under the supervision of the county court for the purpose of determining the number of votes cast for any candidate or for and against any question. After the expiration of the seven-day period as herein provided, the voting machines may be unlocked by the clerk of the county court and the registering counters reset at zero (000) unless the board of canvassers or a court of competent jurisdiction by appropriate court order directs otherwise.

\* \* \* \*

"(3) In canvassing the returns of the election, the board of canvassers shall examine all of the voting machines used in such election and shall determine the number of votes cast for each candidate and for and against each question and by such examination shall procure the correct returns and ascertain the true results of the election. Any candidate or his party representative may be present at such examination.

"(4) If any candidate shall demand a recount of votes cast at an election, the voting machines shall not be reexamined during such recount for

the purpose of re-ascertaining the total number of votes registered on the voting machines for any candidate."

Section 26 provides the procedure when voting machines do not accurately record and tabulate the votes cast, and reads, in part: "* * * If the board of canvassers are unable to accurately correct such errors made by said voting machine and therefore cannot correct the returns from such precinct to accurately reflect the actual votes cast at such election, the total votes registered on such voting machine, despite the fact that such vote may be erroneous, shall be accepted in the canvass and in the recount as the votes cast in such precinct."

Initially, we observe that the use of voting machines at a political election where they are properly installed and used in accordance with the provisions of the statute does not infringe upon the constitutional rights of voters; and notwithstanding an election is conducted with the use of voting machines, mandamus is the proper remedy to control the actions of a board of canvassers in the conduct of a canvass or a recount, where the election officials fail to perform the ministerial or judicial duties imposed on them by statute. *Duncan* v. *County Court of Cabell County*, 138 W. Va. 106, 75 S. E. 2d 97.

As this case involves the action of a board of canvassers in the conduct of a recount, the board of canvassers was governed by the clear provision of Section 32, Article 5-a, Chapter 58, Acts of the Legislature, Regular Session, 1949, which provides that: "Except as modified by this article, the general laws applying to regular, special and primary elections shall apply to elections conducted with the use of voting machines." In the construction of the statute permitting the use of voting machines in political elections and controlling elections conducted with the use of such machines, the words "Except as modified by this article", contained in Section 32, are decisive. Unlike a "proviso" in a statute, which generally defeats the operation of the statute conditionally, an "exception" exempts absolutely

from the operation of the statute. *Oregon Liquor Control Commission* v. *Coe*, 163 Ore. 646, 99 P. 2d 29, 31; *People* v. *Thursam* (City Ct.), 23 N.Y.S. 2d 706, 710, 713; *Gatliff Coal Co.* v. *Cox* (CCA Ky.), 142 F. 2d 876, 882; and see generally Black's Law Dictionary, 4th Ed. 668, 669.

Applying this postulate of statutory construction to the decision of this case, and paraphrasing the provision of the statute immediately under consideration, we hold that the general election laws of this State, which have been crystallized in many decisions of this Court and embraced in Chapter 3 of the West Virginia Code, as amended, now contained in Michie's West Virginia Code, Anno., 1949, and Chapter 3 of Michie's 1953 Cum. Supp. to West Virginia Code, 1949, Anno., apply to all regular, special and primary elections, notwithstanding such elections are conducted with the use of voting machines, except as the general laws of this State are modified by Chapter 58, Article 5-a, Acts of the Legislature, Regular Session, 1949, and Chapter 89, Article 5-a, Acts of the Legislature, Regular Session, 1951. See pt. 4 syl., *State ex rel. Hammond* v. *Hatfield, Mayor,* 137 W. Va. 407, 71 S. E. 2d 807, in which this Court held that: "Under Section 11, Chapter 136, Acts of the Legislature, Regular Session, 1933 (the Charter of the City of Williamson), the mayor and the council of that city, acting as a board of canvassers, shall be governed by the general election laws of the State 'so far as applicable', in canvassing and certifying the returns of a municipal election."

This case involving as it does a recount by a board of canvassers of an election conducted with the use of voting machines, only Sections 25 and 26, Article 5-a, Chapter 89, Acts of the Legislature, Regular Session, 1951, can be held to have modified the general election laws of this State. Specifically subsection (4) of Section 25 provides that: "If any candidate shall demand a recount of the votes cast at an election, the voting machines shall not be reexamined during such recount for the purpose of re-ascertaining the total number of votes registered on the voting machines for any candidate"; and Section 26 provides, in part, that

if the board of canvassers is unable to accurately correct errors made by said voting machine, and therefore cannot correct the returns for a precinct, in which such error occurs, to accurately reflect the actual votes cast at such election, "the total votes registered on such voting machine, despite the fact that such vote may be erroneous, shall be accepted in the canvass and *in the recount* as the votes cast in such precinct." (Italics supplied).

It follows that the petitioner cannot on a recount, as distinguished from a contest, have the board of canvassers go behind the vote recorded and tabulated by the voting machines. But in all other respects, under the express exception contained in Section 32, Chapter 58, Acts of the Legislature, Regular Session, 1949, the general election laws applying to recounts in regular, special and primary elections are applicable.

The law governing a board of canvassers in conducting a recount is stated in *Park* v. *Landfried,* 135 W. Va. 361, 63 S. E. 2d 586; *State ex rel. Hammond* v. *Hatfield, Mayor, supra;* and *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S E. 2d 416. In point 2 of the syllabus of the *Park* case this Court held: "In a special election called by the board of education of a county, pursuant to Code, 11-8-16 and 17, the members of the county court of the county in which the election is held, sitting as a board of canvassers, as well as on a recount, have the right and are under the duty to look both to the applications which accompanied the absentee voters' ballots and the registration lists, which are part of the election returns, to determine whether a voter in the election had the right to vote." In points 2 and 3 of the syllabus of the case of *State ex rel. Hammond* v. *Hatfield, Mayor, supra,* this Court adopted the language used in points 3 and 4 of the syllabus of *State ex rel. Bumgardner* v. *Mills, supra:*

> "2. 'Upon a recount of ballots cast at an election, a board of canvassers is without authority to consider or determine matters not shown by the election returns or by relevant evidence of the commissioners, the poll clerks, or other persons

present at such election respecting such returns, or which may be established only by evidence extrinsic to the election returns.' * * *

"3. 'Upon a recount of election ballots a board of canvassers may not consider or determine questions of fraud, intimidation or illegality in an election, the eligibility of a candidate, the validity of the appointment of precinct election officers, the qualifications of such election officers, or irregularities discoverable in the course of a recount which can be established only by evidence extrinsic to the election returns.' "

It follows from the foregoing that for the purpose of obtaining the relief sought by the petitioner in this proceeding in mandamus it is unnecessary for him to allege in his petition fraud or failure in the mechanism of the voting machines. The petition, in our opinion, is sufficient for the purpose for which this proceeding was instituted, and, therefore, respondents' demurrers thereto should be overruled.

In deference to the distinguished majority members of the board of canvassers, who overruled petitioner's motions and who signed the certificate of result of the election, we observe that respondents' position in this proceeding would result in taking away from a candidate in a political election, in which voting machines are used, the right to a recount of all the votes cast. Such position is in contravention of the express provision of subsection (4), Section 25, Article 5-a, Chapter 89, Acts of the Legislature, Regular Session, 1951, which by strong inferential language evidences a legislative intent that upon the demand of a candidate a recount shall be had of all votes cast at an election, which recount shall embrace all election returns, except that "the voting machines shall not be reexamined during such recount for the purpose of reascertaining the total number of the votes registered on the voting machines for any candidate." That in authorizing the use of voting machines in political elections, the Legislature by the enactment of the statutes, authorizing such use, evidenced a clear intent that the voting machines,

when installed and used as provided by law, would serve both to expedite and preserve the integrity of political elections, cannot be gainsaid; but even where voting machines are used, the human element remains in the conduct of political elections; and the use of voting machines does not dispense with the necessity of having election officials of intelligence and integrity, and the conduct of a canvass or recount of the votes cast at an election, in which voting machines are used, in accordance with the general election laws of this State applicable to regular, special and primary elections, except as modified by Chapter 58, Acts of the Legislature, Regular Session, 1949, and Chapter 89, Acts of the Legislature, Regular Session, 1951.

The fact that under subsection (1), Section 25, Article 5-a, Chapter 89, Acts of the Legislature, Regular Session, 1951, the petitioner, or his attorneys, may have had an opportunity to examine the voting machines under the supervision of the county court for the purpose of determining the number of votes cast for him and the respondent Roberts during the canvass of the returns of the election and for a period of seven days after the canvass was finally completed, does not dispense with a recount as provided by subsection (4), Section 25, which recount should be conducted according to the general election laws, subject only to the provision of said subsection (4) to the effect that "* * * the voting machines shall not be reexamined during such recount for the purpose of reascertaining the total number of votes registered on the voting machines for any candidate."

As this record discloses that the petitioner was not afforded a complete recount of the votes cast in all the precincts at the general election held in Cabell County on November 2, 1954, we award a writ of mandamus, directing the County Court of Cabell County and the members thereof to reconvene as a board of canvassers and conduct a recount, which shall embrace all the election records, except a reconsideration of the tabulations recorded by the voting machines, and shall include in particular an inspection and consideration of the signa-

tures on the poll books with the permanent registration cards, which poll books and registration cards are, under the holdings of this Court in the cases of *Park* v. *Landfried, supra; State ex rel. Hammond* v. *Hatfield, Mayor, supra;* and *State ex rel. Bumgardner* v. *Mills, supra,* a part of the election returns cognizable by a board of canvassers both on a canvass and on a recount of the votes.

*Writ awarded.*