## THE PUEBLO OF SANTA ROSA *v.* FALL, SECRETARY OF THE INTERIOR, ET AL.

### CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

No. 511.   Argued January 11, 1927.—Decided February 21, 1927.

1. A court has power at any stage of a case to require an attorney to show his authority to appear. P. 319.
2. The clearest of proof is required to establish authority in the captain of an Indian Pueblo to deed without valuable consideration a one-half interest in a vast tract of land claimed by the Pueblo and to execute an irrevocable power of attorney to bring suit in its name to establish the title. P. 319.
3. Section 2103, Rev. Stats., declaring void, unless executed and supported as the section prescribes, any agreement with a tribe of Indians for payment or delivery of anything of value in consideration of services for such Indians relative to their lands, and § 2116, declaring that no conveyance of lands etc. from any Indian nation or tribe shall be of any validity unless made by treaty or convention entered into pursuant to the Constitution, apply to Pueblo as well as nomadic Indians. P. 320.
4. A decree dismissing a suit for want of authority in the counsel bringing it, should be without prejudice to the bringing of any other suit properly authorized. P. 321.
12 F. (2d) 332, reversed.

CERTIORARI (*post,* p. 678) to a decree of the Court of Appeals of the District of Columbia which affirmed a decree of the Supreme Court of the District dismissing on the merits a suit in the name of the Pueblo of Santa Rosa

to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from offering, listing or disposing of certain lands in Arizona as public lands of the United States.

Messrs. W. C. Reid and Hudson P. Hibbard, with whom Mr. Louis Kleindienst was on the brief, for the petitioner.

Solicitor General Mitchell, with whom Assistant Attorney General Parmenter, Mr. George A. H. Fraser, Special Assistant to the Attorney General, and Mr. D. V. Hunter, Attorney in the Department of Justice, were on the brief, for the respondents.

Mr. Justice Sutherland delivered the opinion of the Court.

Our order granting the writ of certiorari in this case directed a hearing on the issue as to the existence of authority of counsel who filed the bill to represent complainant. That hearing now has been had.

The suit is brought to enjoin respondents from offering, listing or disposing of certain lands in Arizona as public lands of the United States. The case was here before on appeal, Lane v. Pueblo of Santa Rosa, 249 U. S. 110, and was remanded to the District supreme court with directions to overrule a motion to dismiss on the merits and allow defendants to answer the bill. After receipt of the mandate, an answer was filed denying the allegations of the bill and alleging, among other things, that the so-called pueblo had never authorized the suit or ratified or approved the acts of the attorneys in bringing or prosecuting it. And upon that ground, a motion to dismiss, supported by affidavits, was filed at the same time. After a hearing upon the motion, the trial court postponed a decision until final hearing; and the taking of testimony was proceeded with, much of it relating to the issue now before this court.

The record is a long one, but the pertinent facts may be shortly stated. About the year 1880, deeds were drawn and acknowledged by a number of Indians, conveying to one Hunter as trustee an interest in the lands, grants and privileges of certain named villages. Among these deeds was one which purported to be made by " Luis, Captain of the Village or Pueblo of Santa Rosa," for himself and inhabitants of that village and others, and to convey an undivided half interest in 720 square miles of land. At the same time, powers of attorney were executed by the various grantors. The only one with which we are here concerned is that given by Luis, the terms of which, we assume for present purposes, were sufficient to authorize Hunter to bring and maintain a suit like the present. It granted to Hunter powers of delegation, substitution and revocation, and recited that as it was " accompanied with an interest . . . it is hereby made irrevocable." While Hunter was authorized to render services in establishing the claim of the Indians to the lands, it does not appear that he agreed to do so unless by implication merely; nor does it appear that there was any other consideration for the conveyance.

In 1911, Hunter entered into contracts with one Martin, by which the latter was to undertake to establish the Indian title and make certain cash payments in consideration of the conveyance to him of an undivided three-fourths interest in the lands which would fall to Hunter upon a partition between himself and the Indians. The same year, and long after the death of Luis, Hunter executed a delegation of his powers to one Cates. Hunter died in 1912, and this suit was brought in 1914 by a firm of lawyers of which Cates was a member. Cates died in 1920, several years before the motion to dismiss was heard in the court of first instance.

The Luis deed was not recorded in the counties where the lands are situated until 34 years after its execution

and two years after the death of Hunter, the grantee. The delay is not explained. Careful and comprehensive inquiries, conducted among the Indians over a period of several years, failed to disclose anyone who knew of any authority from the Indians to bring or maintain the suit. Among them were contemporaries of Luis but none had ever heard of the deed or the power; and it is made clear that these instruments properly could not have been executed or any interest of the Indians conveyed without previous deliberation for that purpose on the part of the Indians in council, and that no such council was ever assembled. The evidence further shows that no suit properly could have been brought without the prior consent of the Indians in council and that no council for that purpose was ever assembled. The attitude of the government seems to have been that the lands claimed are public lands, subject only to the ordinary right of Indian occupancy.

Early in the year 1922, after consideration, 181 of the 195 adult male inhabitants of the villages said to form the Pueblo of Santa Rosa signed a petition declaring that none of them knew about the suit until after it was brought or gave anyone a right to bring it, and that none of them approves of it or wants it to go on, and requesting " that this suit which we do not want, and with which we have nothing to do, be dismissed."

The court of first instance, assuming without deciding that the plaintiff was a pueblo as set forth in the bill and owned the lands in question, held that it had never authorized the bringing or maintenance of the suit and that it did not have under any law or by any custom, usage or tradition the power to make the conveyance or power of attorney in question, and entered a decree dismissing the bill. The court of appeals disapproved the holding of the court of first instance upon the question of authority to bring the suit, on the ground that a chal-

lenge to the right of counsel to appear is a preliminary matter, to be disposed of before proceeding to the merits; but affirmed the order of dismissal upon the merits. 12 F. (2d) 332. In this we think that court erred.

The question as to the authority of counsel was raised by motion to dismiss filed with the answer. There was a hearing upon the motion, but the trial court of its own accord postponed a decision upon it until final hearing on the merits, an order clearly within its discretion. Whether, as a matter of practice, the challenge to the authority of counsel was seasonably interposed, it is not important to decide, for in any event, the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear. In *The King of Spain* v. *Oliver,* 2 Wash. C. C. 429, 430, Mr. Justice Washington, sitting in the circuit court, said: ". . . it would be strange, if a Court whose right and whose duty it is to superintend the conduct of its officers, should not have the power to inquire by what authority an attorney of that Court undertakes to sue or to defend, in the name of another—whether that other is a real or fictitious person—and whether its process is used for the purpose of vexation or fraud, instead of that for which alone it is intended. The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case." See also, *W. A. Gage & Co.* v. *Bell,* 124 Fed. 371, 380; *McKiernan et al.* v. *Patrick et al.,* 4 How. (Miss.) 333, 335; *Clark* v. *Willett,* 35 Cal. 534, 539–541; *Miller* v. *Assurance Co.,* 233 Mo. 91, 99; *Munhall* v. *Mitchell,* 178 Mo. App. 494, 501; *S. F. Savings Union* v. *Long,* 123 Cal. 107, 113.

To justify the conclusion that there was no authority to bring or maintain the suit really needs nothing beyond the foregoing short recital of the facts. That Luis was without power to execute the papers in question, for lack

of authority from the Indian council, in our opinion is well
established.    Indeed, there is no evidence to the contrary.
worthy of serious consideration.    The rights of Indians,
unlettered and under national wardship, are here involved,
and a deed purporting to convey their half interest in an
enormous tract of country, without consideration aside
from some indefinite and doubtful promise to establish
their claim against the government, is upon its face so
improvident as to call for affirmative proof of authority
of the clearest kind.    Instead of this we have no affirma-
tive evidence of a substantial character and the suspicious
circumstance of long unexplained delay in recording the
deed and power and in bringing the suit.

. But wholly aside from this, the conveyance and the
power were both void by force of §§ 2103 and 2116 Re-
vised Statutes.    The first of these sections provides that
any agreement with any tribe of Indians for the payment
or delivery of anything of value in present or in prospec-
tive in consideration of services for such Indians relative
to their lands is void, unless, among other requirements,
the agreement is in writing, executed before a judge of a
court of record, bears the approval of the Secretary of the
Interior and the Commissioner of Indian Affairs endorsed
upon it, and contains the names of all parties in interest,
their residence and occupation; and further that " if made
with a tribe, by their tribal authorities, the scope of au-
thority and the reason for exercising that authority, shall
be given specifically."    Section 2116 declares that no
" conveyance of lands, or of any title or claim thereto,
from any Indian nation or tribe of Indians, shall be of
any validity in law or equity, unless the same be made by
treaty or convention entered into pursuant to the Consti-
tution.".    These sections apply here whether the Indians
concerned are to be classified as nomadic or Pueblo In-
dians.    *United States* v. *Candelaria,* 271 U. S. 432, 441–
442.    None of their requirements can be dispensed with,

and it does not appear that in respect of most of them there was even an attempt to comply. See and compare *Green* v. *Menominee Tribe,* 233 U. S. 558, 568; *Lease of Indian Lands for Grazing Purposes,* 18 Op. Atty. Gen. 235, 237; *Indian Contract, Id.,* 497.

We agree with the conclusions of the court of first instance, but are of opinion that the dismissal should have been not upon the merits, but without prejudice to a suit if properly brought. The decrees of both courts, therefore, are erroneous, and the cause must be remanded to the court of first instance with directions to dismiss the bill, on the ground that the suit was brought by counsel without authority, but without prejudice to the bringing of any other suit hereafter by and with the authority of the alleged Pueblo of Santa Rosa. Other grounds appearing from the record, which would lead to the same result, we pass without consideration.

*Decree reversed.*