PAULINE NEWMAN, Circuit Judge,
dissenting.
This case has been decided for the best and worst of reasons: to end some thirty-eight years of litigation, by a monetary payment the maximum amount of which was decided in 1978; yet denying the majority of the plaintiff Sioux Indians, as comprise the Oglala and the Rosebud Sioux tribes, the right to withdraw their action.
I offer no view on the prospects for the alternate remedy desired by the Oglala and Rosebud and apparently other Sioux tribes, but I greatly question the basis of the Claims Court’s decision.
The proceedings from which this appeal is taken derived from a misperception, now apparently ratified by this court, of our prior decision in this cause. In Cheyenne River Sioux Tribe v. United States, 806 F.2d 1046 (Fed.Cir.1986), cert, denied sub nom. Oglala Sioux Tribe v. United States, 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987), we rejected the Claims Court’s determination of the dollar amount of gratuitous offsets based on a unilateral offer by the government. We held that the amount of offsets could not be imposed by “a settlement negotiated by counsel to which the parties did not agree”, id. at 1052, and we suggested that counsel for the Sioux tribes could negotiate the offsets with counsel for the United States. I do not read in that suggestion any authoriza *282 tion to counsel for the Sioux tribes to enter into a binding agreement with the government, or to achieve final judgment thereon by joint motion, contrary to express instructions of the client tribes that represent the majority of Sioux Indians.
The prior counsel for these Sioux tribes, and counsel for the United States, now join together in arguing that these tribes can not withdraw from the stipulation between counsel, although it was neither authorized nor accepted, and can not impeach the ensuing final judgment, for the reason — apparently the only reason — that the judgment applies to “the Sioux Tribe of Indians” and not to the individual tribes. The Sioux Tribe of Indians is no more than a collective name used for convenience in the case caption for these eight plaintiffs. The actual Sioux Tribe of Indians was dissolved in 1890.
Each of the eight Sioux tribes that joined to start these proceedings before the Indian Claims Commission had, apparently, entered into a contract with counsel. Most of these contracts have terminated and are no longer in effect. It is inconceivable to me that, with over half the clientele in loud revolt, nominal counsel has the authority to bind these tribes, against their intentions and instructions. Further, the United States as well as the Claims Court had full knowledge, throughout the past several years of these proceedings, that most of the principals objected to the negotiations and to the purported settlement.[1] “The law is settled that an attorney of record may not compromise, settle, or consent to a final disposition of his client’s case without express authority.” Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136, 139 (10th Cir.1966) (on appeal from denial of a Rule 60(b) motion (as in the case at bar), reversing as to a defendant who did not consent to the stipulation and entry of judgment agreed to by his attorney, because not informed of the agreement beforehand).
The Claims Court held that the Stipulation of Facts and the Joint Motion to Enter Judgment were a routine act of counsel, of the nature of the “evidentiary stipulation” authorized in United States v. Texas, 523 F.Supp. 703, 711 (E.D.Tex.1981), and thus binding on the client. The Oglala and Rosebud tribes argue that the Stipulation of Facts, inter alia that the offsets total $3,707,892.98, and the Joint Motion to Enter Judgment, comprise a settlement agreement and thus can not bind the principal if unauthorized and unaccepted.
The entry of judgment is surely not a routine “evidentiary stipulation” such as is encountered in day-to-day trial management: not only because the stipulation disposes of some 3.7 million dollars in moneys previously adjudged to be due the Sioux Indians; but because counsel for both sides knew that since at least 1979 tribes representing a majority of Sioux Indians had given instructions contrary to the settlement. The record contains two resolutions by the Oglala Sioux Tribal Council informing counsel that it no longer sought money damages, but wanted to pursue legal and legislative strategies to gain return of ancestral lands. These resolutions also directed counsel to have the Oglala Sioux Tribe dismissed from this litigation. See Tribal Council Res. No. 81-98 (Oct. 29, 1981); Tribal Council Res. No. 83-160 (Sept. 13, 1983).
A lawyer can not be authorized by a court to make a settlement and bind the client contrary to the client’s wishes. Nor can either the court or the United States ignore the tribes’ several attempts to discontinue Mr. Lazarus’ representation.[2] *283 The court does not discuss the asserted violation of 25 U.S.C. § 81.
In light of this extended history, the Claims Court’s acceptance of the Stipulation of Facts and the grant of the Joint Motion to Enter Judgment is incongruous; and its denial of appellants’ motion for relief under Rule 60(b) is in plain error, in light of their undisputed assertion that they were given no prior notice of the settlement.
Our ruling today does more than negate the integrity of the attorney-client relationship. “It is fairly clear that any Federal government action is subject to the United States’ fiduciary responsibilities toward the Indian tribes.” Nance v. Environmental Protection Agency, 645 F.2d 701, 711 (9th Cir.), cert. denied sub nom. Crow Tribe of Indians v. Environmental Protection Agency, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981) (emphasis in original) (citing Seminole Nation v. United States, 316 U.S. 286, 297, 62 S.Ct. 1049, 1054-55, 86 L.Ed. 1777 (1942)). See Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978) (the Indian tribes are dependent on the government’s good faith). Further, the supervision of counsel lies ultimately with the courts. Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 319, 47 S.Ct. 361, 362, 71 L.Ed. 658 (1927).
These obligations include respecting the authority of the tribes to ascertain their own best interests, and not to impose on the tribes the views of their lawyer. The prolonged pendency of this case does not justify the irregular procedure whereby it has been brought to an end.

. As discussed by the Claims Court, of the eight plaintiff Sioux tribes, appellants and the Standing Rock Sioux Tribe, the Cheyenne River Sioux Tribe, the Lower Brule Sioux Tribe, and the Fort Peck Sioux Tribe, desired to seek a return of ancestral land rather than a money award; the Crow Creek Sioux Tribe and the Santee Sioux Tribe were the only plaintiffs willing to accept the money settlement. Sioux Tribe of Indians v. United States, 8 Cl.Ct. 80, 86-90 (1985).

. After the expiration of his contract in 1977, the Oglala Sioux notified Mr. Lazarus that he was no longer authorized to act on the Tribe’s behalf. See Tribal Council Res. No. 81-68 (May 19, 1981) (“Arthur Lazarus, Jr., Esquire has no authority to represent the Oglala Sioux Tribe in any claims litigation, ... and that any action *283 taken or that may be taken purportedly on behalf of the Oglala Sioux Tribe by Mr. Lazarus will be completely disavowed by the Oglala Sioux Tribe”); letter from Oglala Vice President John W. Steele to Arthur Lazarus, Jr. (Nov. 15, 1983) ("Your contract with the Oglala Sioux Tribe has terminated in 1977 and it is the position of the Oglala Sioux Tribe that you do not represent the Tribe____ You are directed not to take any action inconsistent with this Resolution”). The Claims Court was notified directly by Mr. American Horse, president of the Tribal Council. Mr. Lazarus’s motions to withdraw were rejected by the Claims Court, in the absence of designation of substitute counsel.