696 So.2d 1199 (1997)
Max A. GOLDFARB, Appellant,
v.
Marilyn Z. DAITCH, Appellee.
No. 96-2806.
District Court of Appeal of Florida, Third District.
May 21, 1997.
Rehearing Denied August 6, 1997.
*1200 Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel and Elliot H. Scherker, Miami, and Alan T. Dimond, Miami, for appellant.
Gary S. Gostel, Miami, for appellee.
Before NESBITT, GODERICH and SORONDO, JJ.
NESBITT, Judge.
Appellant Goldfarb appeals an order of the trial court that, among other things, granted appellee Daitch's "Verified Emergency Motion to Vacate Order of Disbursement of Funds" filed pursuant to Florida Rule of Civil Procedure 1.540 and accompanying award of attorney's fees. Daitch agrees, with some minor exceptions, that the facts of the case are accurately set forth in Goldfarb's brief.

I.
Daitch was the defendant in an action filed by the Federal National Mortgage Association (FNMA) for foreclosure of a mortgage on her residence. A default and, ultimately, a final judgment of foreclosure, were entered against her. A clerk's sale was scheduled for August 14, 1996.
Caro Investments, Inc., was the high bidder at the sale and the clerk issued a certificate of sale on August 14. On August 16 the trial court, on Caro Investments' motion, assigned the bid to Claire Blanken. That same day, Goldfarb filed a motion as counsel for Daitch that sought disbursement of surplus funds in the court's registry. Argo Mortgage Corporation (Argo) filed a separate motion for disbursement of funds on August 26, 1996, advising the court that it was the second mortgage holder in place of First Union National Bank of Florida.
The trial court entered its order granting the motion to disburse on August 27, 1996. The order directed the clerk to disburse: (1) "[t]he amount due the plaintiff [FNMA]"; (2) "[t]he amount due to the second mortgage holder"; and "[t]he balance to Max A. Goldfarb, as attorney for Marilyn Daitch." The clerk issued a certificate of disbursement on August 27, for payments to FNMA, clerk's fees and documentary stamps. A check in the amount of $19,934.85 issued to counsel for FNMA on August 27.
Also on August 27, the clerk issued a certificate of title to Claire Blanken, whose address is identified on the certificate as "c/o Max Goldfarb" at Goldfarb's law office. On August 28, 1996, the trial court issued an amended disbursement order, providing that the sum of $33,699.41 should be disbursed to Argo, as second mortgage holder, rather than to First Union National Bank. The clerk issued a check in the amount of $58,705.74 to Goldfarb on August 29, 1996. A writ of possession was issued on August 29, to put Claire Blanken in possession of the property after 24 hours of posting a notice on the property.
On September 4, 1996, Gary S. Gostel, filed a notice of appearance on behalf of Daitch. Gostel also filed a "Verified Emergency Motion to Vacate Order of Disbursement of Funds."
The motion set forth the following recitation:
2. During the week of August 26, 1996, an individual appeared at Defendant's home and advised her that she no longer owned her home, had to vacate same, but if she signed papers in his possession an attempt would be made to reacquire the home on her behalf. Defendant recalls signing the paper but was not provided a copy of same. She is unaware of what she signed. The individual identified himself as an "investor."
3.... [O]n or about August 29, 1996, said "investor" delivered to Defendant, at her residence, a check, payable to her in the sum of $39,137.16, on the account of M.A. Goldfarb....

*1201 4. Defendant has never met and/or discussed with M.A. Goldfarb any matters pertaining to this lawsuit and/or disbursement of any funds from the Court Registry, either in person or by telephone. M.A. Goldfarb has no authority to represent Defendant within these proceedings....
The motion further alleged that Daitch had been unaware of Goldfarb's motion to disburse or that Goldfarb "was purportedly representing her interests before the court." According to Gostel, one-third of the $58,705.74 was deducted from the surplus funds as a "contingency fee," such that Goldfarb "was paid the sum of $19,568.58 for filing a three (3) paragraph Motion and obtaining a court Order thereon, all without the knowledge and/or consent of his alleged client." Thus, the motion alleged that "a fraud has been perpetrated on this court" by Goldfarb and Daitch "has been denied her day in court by the misconduct of said counsel." Gostel sought an order directing Goldfarb to pay the sum of $19,568.58 to Daitch, along with costs and fees pursuant to Section 57.105, Florida Statutes (1995).

THE HEARING

Daitch's testimony.
Daitch testified that she had not retained counsel in the foreclosure proceeding and that a default had been entered against her. She stated that she had been pulling into her driveway on the night of August 27, 1996, when two men "jumped out" of a car and told her that "they had purchased my house on the courthouse steps and they needed to talk to me about it." Daitch was "scared" because the men "were big and intimidating and one of them had a briefcase." She entered her house through the garage and then opened the front door to allow the men into the house. One of the men identified himself as Richard Benitez.
According to Daitch, she was told that the men "wanted to know if they could help me or let them try to help me re-acquire my house back, and I said would you come in." She described herself as "too frightened to do anything but" sign the documents that were given to her and that she had not read the documents "I was too frightened and my eyes would not focus at the time." She also said that the document had been "blank" and that she did not know what she had signed.
On cross-examination, Goldfarb introduced a power of attorney that bore Daitch's signature and the date of August 14, 1996. The document recites that Daitch constituted B.G. Gross and/or Jaime Gross as her attorney-in-fact, with specific authority: (1) "to employ an attorney to represent me in the foreclosure case ... to obtain any surplus funds"; and (2) to deduct one-third of the funds "as a non-refundable option ... for a 30 day period of purchase of property," with a payment of an additional $30,000.00 due upon exercise of the option. The house would be sold at a price of $130,000, and Gross would "take back a mortgage for the balance for 15 years at 12% interest." The document is signed by Benitez, William Bellow and the two attorneys-in-fact and is notarized by Benitez on August 14. Daitch testified that the document had been "blank" when she signed it.
According to Daitch, the two men returned two nights after she signed the document and gave her a check from Goldfarb in the amount of $39,137.16. A copy of the check was introduced into evidence; the check reflects that it is for "surplus funds less 1/3 fee for collection." Daitch signed a receipt for the check. On cross-examination, Goldfarb introduced the receipt, which reflects the following breakdown:

COLLECTION $58,705.74
Legal Fee 2,000.00
 __________
 $56,705.74
B.G. Gross-Option $17,568.58
Money
YOUR OPTION $39,137.16

Daitch's signature appears underneath these figures.
She denied having had an attorney-client relationship with Goldfarb and testified that she had first become aware of his involvement when she received the check. Daitch testified that she had not been aware of the existence of the surplus funds prior to having received the check and that she had not engaged Goldfarb as her counsel. On cross-examination by Goldfarb, Daitch testified *1202 that she had been contacted by his paralegal, Ms. Hernandez, after August 27. In one of these conversations, Daitch told Ms. Hernandez to give her check to a friend who worked in the building in which Goldfarb maintained his offices, and Ms. Hernandez instructed her that the check would be hand-delivered because Daitch's signature was required to acknowledge receipt of the check.

Goldfarb's testimony.
The trial judge called Goldfarb as a witness. The examination commenced with the trial judge's directive to "explain to me, if you would, please, how you came to file a motion on behalf of this witness and retain [sic] surplus funds." Goldfarb responded:
Your Honor, on the 15th of August Jaime Gross, [B.G.] Gross, and William Bellow came to my office and asked me to represent Mrs. Daitch based on this Power of Attorney to obtain surplus funds that they... had told her they were going to attempt to resell this house to her and that the surplus funds would [be] used as a deposit.
So based on this signed, notarized document... I then filed a motion for the surplus funds.
Goldfarb had not met Daitch at the time he was engaged. He knew the Grosses, having represented them on prior occasions, but was not representing them in this transaction and did not then have any open matters in which he represented their interests. Goldfarb did not represent Claire Blanken, who had purchased the property.
The trial judge raised the subject of Goldfarb's fee. Goldfarb testified that his total fee had been $2000, which was not a contingency fee, and that he had disbursed $17,568 to B.G. Gross, for the option payment, according to the power of attorney agreement. Goldfarb showed a copy of the check to the trial judge, who admitted the check into evidence. The check is endorsed. Goldfarb explained that he had expected to represent Daitch in obtaining the surplus funds and "also to handle the closing in the event there was a closing."
Goldfarb further testified that he had left on vacation on August 30 and that his paralegal had acted to reschedule the hearing on Daitch's motion from September 3 to September 10. He returned from vacation on the day before the September 10 hearing. As he explained, he had been taken aback by the motion "because Mrs. Daitch spoke to my paralegal and she knew what was going on."

Other witnesses.
Daitch's counsel called Gregory T. Hall, counsel for Argo (the second mortgagee), who testified that he had filed his motion for disbursement and noticed the motion for September 3, 1996. He spoke with Goldfarb on August 27 and was advised that a disbursement order had been entered; Hall provided Goldfarb with the payoff amount on Argo's mortgage, and Goldfarb thereupon secured the August 28 order, which provided for the payment to Argo. Argo was paid, although the actual payment was $90 more than the amount due and owing.
Goldfarb called Jaime Gross as a witness. Gross testified that the foreclosure sale had taken place on August 14, 1996, and that he had visited her that night with Richard Benitez and William Bellow. Under questioning by the trial judge, Gross explained that he had been "looking to refinance her." He filled out the power of attorney form after having "figured out ... the best deal I could make" on a refinancing, "hoping Mrs. Daitch would do it; if not, I would walk away." Goldfarb had not been involved in preparing the power of attorney.
When Daitch drove into her driveway, Gross asked whether she was "interested in saving [her] home and she said yes." Daitch invited the three men into the house and Gross "explained to her what her options were" including his offer to "work a deal with the ... bidder from the sale, to save the home." Gross testified that he had intended to offer the bidder, Ivan Caro, a "small profit and he would sell the property to me." He described this as one of the "standard deals that happen at these foreclosure sales." Gross told Daitch that he would retain an attorney "to get back any surplus funds due her" and that she "would give me [a] non-refundable deposit of any surplus funds I would collect of which I would pay legal fees to Mr. Caro and she could re-purchase the *1203 home [with] whatever is left plus a $30,000 deposit." He also offered to take a purchase money mortgage on the property. Daitch agreed to their proposal and signed the document.
B.G. Gross, who is Jaime Gross' father, received the payment of $17,568.58 from Goldfarb's trust account after the disbursement. In addition to paying Goldfarb's fee, $5000 of the funds were paid to Mr. Caro "to induce him to give over this third party bid to my investor." The remainder was going to be the part of the deposit for Daitch to buy her home back. Gross engaged Goldfarb on the day after his meeting with Daitch, once he had spoken to Mr. Caro "to see if he would consider doing this."
Adria Hernandez, Goldfarb's assistant, testified that she had spoken to Daitch on August 29, 1996, to tell her that the check was going to be delivered that day. Daitch called Goldfarb's office on the day after a friend had visited Goldfarb's office and inquired about the case. According to Ms. Hernandez, they had a pleasant conversation and "I told her we had a check for her and that we wanted to have [it] ... delivered." Daitch asked "if her friend could pick it up" and Ms. Hernandez told her that "we want to make sure the check gets delivered ... to you," with a signed receipt in return. Ms. Hernandez testified that she had prepared the receipt, including the financial breakdown of the disbursement, with a signature line for Daitch. She also prepared a check to B.G. Gross for Goldfarb's signature.

The Trial Judge's ruling.
At the conclusion of the testimony, Daitch's counsel asked the court to order Goldfarb to return the $19,568.58 and to pay Daitch's attorney's fees. Gostel thereupon produced an affidavit, setting forth his request for $3,376.00 in fees, which request the trial judge granted.
The order signed by the trial judge found that Goldfarb "had no authority to represent" Daitch "and obtain surplus funds on her behalf." The trial judge further found that "there existed no valid attorney/client relationship by and between" Goldfarb and Daitch. The orders disbursing the surplus funds were vacated and Goldfarb was ordered to deliver the sum of $19,568.58 to Mr. Gostel. The attorney's fee award was also set forth in the order, with Section 57.105 cited as the authority therefor. Goldfarb filed a timely notice of appeal on October 9, 1996.

II.
Goldfarb's primary claim on appeal is that the trial court exceeded its jurisdiction in entering the order being appealed. The argument is that the trial court's order had the effect of rescinding the contract purportedly entered into between Daitch and other persons (the "investors") who were not parties to the underlying foreclosure action. That, in turn, had the effect of invalidating the contractual agreement wherein Goldfarb was retained to secure disbursement of surplus funds on Daitch's behalf.
We reject the notion that the trial court acted in excess of its jurisdiction in entering the order in question. As noted earlier, Judge Gordon entered two orders (an initial order and an amended order) disbursing surplus funds based in part on Goldfarb's representation that he was Daitch's attorney. In the order being appealed Judge Gordon, among other things, vacated those previous orders based on a finding that Goldfarb was not authorized to represent Daitch and obtain surplus funds on her behalf.
The law is clear that Judge Gordon had, at a minimum, the inherent power to vacate his own previous orders. "[E]very court, whether possessed of original or appellate jurisdiction, is vested with inherent power to vacate its own orders, judgments, or decrees, if void, and indeed, every such court is in duty bound to do so when appropriate procedure is invoked for that purpose." Skipper v. Schumacher, 118 Fla. 867, 160 So. 357, 359 (1935); see also 13 Fla. Jur.2d Courts and Judges § 16 (1979). Moreover, "[o]rders, decrees, or judgments, procured through fraud, collusion, deceit, or mistake, may be opened, vacated, or modified at any time, on the proper showing made by the parties injured." Zemurray v. Kilgore, 130 Fla. 317, 177 So. 714, 718 (1937).
*1204 Daitch correctly filed her motion under rule 1.540(b), as that rule is the appropriate procedural vehicle for raising the issue of fraud or deceit perpetrated in procuring previously entered orders. See generally De-Claire v. Yohanan, 453 So.2d 375 (Fla.1984). In defining extrinsic fraud, or "fraud on the court," the court in DeClaire referred to the situation where "an attorney fraudulently or without authority assumes to represent a party and connives at his defeat...." Id. at 377 (emphasis added). That is the situation Judge Gordon found to exist in this case.
It is true, that a document was introduced below entitled "Limited Power of Attorney" wherein Daitch purportedly authorized B.G. Gross and/or Jaime Gross to employ an attorney to represent her in the foreclosure case. The existence of that alleged agreement, however, does not divest the court of its power or jurisdiction to determine whether Max Goldfarb was authorized to represent Marilyn Daitch in the proceedings that had taken place before that very court. It is important to remember that the issue is the existence of an attorney-client relationship between Daitch and Goldfarb; not the "contract" between Daitch and the investors, or the contractual relationship between the attorney-in-fact (B.G.Gross) and Goldfarb. Indeed, any agreement between the attorney-in-fact and Goldfarb would in reality be an agreement between Goldfarb and Daitch, as the attorney-in-fact would have been retaining Goldfarb on Daitch's behalf. Thus, the only "contract," involving persons not before the court, that is arguably affected by the court's ruling is the one allegedly entered into between Daitch and the investors.
In sum, while the trial court's order impliedly finds that Daitch's grant of a limited power of attorney to the Grosses was void (at least insofar as it purported to authorize them to hire an attorney to represent her in the foreclosure matter), that does not operate to prevent the court from considering the issue of Goldfarb's authority. It seems fundamental that when an attorney appears before a court purporting to represent a party in a matter, and the court enters orders in reliance on that representation, if the court later concludes that the attorney did not in fact have authority to represent that party, the court may vacate orders entered at that attorney's behest.
The lower court's jurisdiction is not affected by the fact that it is necessarily deciding the validity of the Limited Power of Attorney purportedly entered into between Daitch and the investors. Over 70 years ago a similar issue was before the United States Supreme Court.
In Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658 (1927), ... a suit had been filed in the name of an Indian tribe pursuant to a power of attorney executed by a man who purported to be the "Captain" or chief [of the village of Santa Rosa]. The defendant, by way of a motion to dismiss, alleged that counsel had no authority to sue in the name of the tribe. [The pueblo itself joined in the motion to dismiss.] At an evidentiary hearing, the defendant offered evidence of "inquiries, conducted among the Indians ... [that] failed to disclose anyone who knew of any authority from the Indians to bring or maintain the suit.... The evidence further show[ed] that no suit properly could have been brought without the prior consent of the Indians in council and that no council for that purpose was ever assembled.... Indeed, there [was] no evidence to the contrary worthy of serious consideration." The proper result, the court declared, was that the trial court should "dismiss the bill on the ground that the suit was brought by counsel without authority...."
Golden Hill Paugussett Tribe of Indians v. Southbury, 231 Conn. 563, 651 A.2d 1246, 1253-54 (1995) (citations omitted)(emphasis added).
In very relevant language the Court in Pueblo of Santa Rosa stated:
[T]he trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear. In The King of Spain v. Oliver, Fed. Cas. No. 7,814, 2 Wash. C.C. 429, 430, Mr. Justice Washington, sitting in the Circuit Court said:
`* * * It would be strange, if a court whose duty it is to superintend the conduct *1205 of its officers, should not have the power to inquire by what authority an attorney of that court undertakes to sue or to defend, in the name of another-whether that other is a real or fictitious person, and whether its process is used for the purpose of vexation or fraud, instead of that for which alone it is intended. The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the court, and ought to be adapted to the case.'
Pueblo of Santa Rosa, 273 U.S. at 319, 47 S.Ct. at 362. The Supreme Court necessarily authorized invalidation of the power of attorney by which the attorney appearing before the court purported to derive his authority.
In addition to his finding that Goldfarb was not authorized to represent Daitch, Judge Gordon also found that Goldfarb had a conflict of interest. Addressing Goldfarb, the judge asked: "You have an ongoing continuing relationship with these other people in their investment enterprises and you are purporting to represent someone who is on the other side of the deal, doesn't that sound like a conflict to you?" To which Goldfarb ultimately, incredibly, responded: "Judge, Your Honor I don't see anything wrong in representing investors in these type of deals." (emphasis added). By this last statement Goldfarb in effect conceded that he was in substance purporting to represent both sides in what should have been an arms-length transaction; a patent conflict of interest.
Finally, the attorney's fee award assessed against Goldfarb is proper. Assuming, without deciding, that section 57.105, Florida Statutes does not authorize the award, this case nevertheless falls under the rule that when an attorney acts in his own interest and not on behalf of a client, the court may use its inherent power to enter an attorney's fees award against such an attorney to recover for the effort involved in undoing or correcting the results of the unauthorized acts. United States Savings Bank v. Pittman, 80 Fla. 423, 86 So. 567 (1920); Sanchez v. Sanchez, 435 So.2d 347 (Fla. 3d DCA 1983).
The order under review is in all respects
AFFIRMED.
GODERICH, J., concurs.
SORONDO, J., dissents.
SORONDO, Judge (dissenting).
I respectfully dissent. There are three issues before this court. First, whether the trial court exceeded its jurisdiction by entering an order which, in effect, rescinds the contract between Daitch and the Investors, pursuant to which Goldfarb was hired to represent Daitch. Second, whether Goldfarb waived his right to appellate review of Daitch's Rule 1.540 motion by failing to object before the trial judge and proceeding with the evidentiary hearing. Third, whether the trial judge had jurisdiction to award attorney's fees against Goldfarb.
I first address the issue of whether Goldfarb waived his right to appellate review by failing to object to the proceeding below. I believe that he did not. The law is clear that subject-matter jurisdiction cannot be conferred by consent or failure to object. Pacesetter Builders-Joint Venture, Inc. v. Coral Springs Property Services, Inc., 531 So.2d 1061 (Fla. 4th DCA 1988). Further, jurisdictional matters may be raised for the first time on appeal. Florida Auto. Dealers Indust. Benefit Trust v. Small, 592 So.2d 1179 (Fla. 1st DCA 1992).
The next issue is whether the trial court exceeded its jurisdiction by entering the order herein. In Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927), the Supreme Court of Florida stated:
Jurisdiction of the subject... matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power... But before this potential jurisdiction of the subject-matter  this power to hear and determine  can be exercised, it must be lawfully invoked and called into action; the parties and the subject-matter of the *1206 particular case must be brought before the court in such a way that it acquires the jurisdiction and the power to act. There must be a right in dispute between two or more parties; a proceeding commenced under the proper rules of law; process must be served on the opposite party or parties in order that they may have an opportunity to be heard, or the property, if the subject-matter of the action, must be within such jurisdiction, and the owner or persons having the right to claim it, or to be heard, must be notified as required by law of the pendency of the proceeding ... The jurisdiction and power of a court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding sua sponte.

112 So. at 775 (citations omitted). In the present case Daitch filed a motion to vacate the order of disbursement by way of Rule 1.540(b)(3) of the Florida Rules of Civil Procedure. No other rule of law or legal authority was invoked or argued below. Subsection (b)(3) of that rule provides for relief where there has been "fraud ..., misrepresentation, or other misconduct of an adverse party..." (emphasis added). Neither the Investors or Goldfarb are adverse parties to this foreclosure action. The trial court's ruling, ostensibly on the motion to vacate, has the effect of rescinding the contract between Daitch and the Investors, as well as the contractual relationship between the attorney-in-fact (B.G.Gross) and Goldfarb, neither of whom were parties to the underlying foreclosure action. Under these circumstances the Investors are indispensable parties to an action for rescission of the original contract with Daitch, and Goldfarb is an indispensable party to his contract with the attorney-in-fact. Allman v. Wolfe, 592 So.2d 1261 (Fla. 2d DCA 1992)("An indispensable party is one whose interest in the subject matter is such that if he is not joined a complete and efficient determination of the equities and rights between the other parties is not possible ... In an action for rescission of a transaction, the parties to the transaction are indispensable."). The trial court did not have jurisdiction to adjudicate the contractual rights of these indispensable parties within the proceeding conducted below.
Nor did the trial court have jurisdiction to assess legal fees against Goldfarb under the provisions of Section 57.105, Florida Statutes.[1] This section reads as follows:
The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party;...
(emphasis added). The parties to the present action are Federal National Mortgage Association, Marilyn Z. Daitch, First Union National Bank and the United States of America. Goldfarb is not a party to this action and although he served as legal counsel for a "losing party," the intent of this statute is clearly to compensate "the prevailing party" in cases where there is a "complete absence of a justiciable issue of either law or fact." The prevailing parties in this case are, arguably, everyone but Ms. Daitch. Accordingly, under no reading of the statute would she be entitled to attorneys fees. Additionally, even if the Rule 1.540 motion were the appropriate vehicle for the resolution of this dispute, there are three sides to this quarrel which would certainly give rise to a "justiciable issue of ... fact" for the fact-finder to resolve.
I am not blind to the facts of this case which suggest that Mrs. Daitch was not treated fairly. Her remedy, however, lies in an independent action for rescission of her contract with the so-called "Investors" and *1207 Max Goldfarb and not within the ambit of this foreclosure action.
I would reverse the order of the trial judge granting Daitch's Verified Motion to Vacate Order of Disbursement of Funds and reinstate the trial court's original order of disbursement. I would also reverse the award of attorney's fees in favor of Daitch and against Max Goldfarb.
NOTES
[1] The majority justifies the award of attorney's fees herein on the authority of Sanchez v. Sanchez, 435 So.2d 347 (Fla. 3d DCA 1983) and United States Savings Bank v. Pittman et al., 80 Fla. 423, 86 So. 567 (1920). Daitch's motion requested attorney's fees on the authority of § 57.105, Florida Statutes. The request was granted on that basis. At no time were these cases argued to the trial judge or to this court on appeal. The majority opinion therefore affirms the award of attorney's fees against Goldfarb on the basis of legal precedent which was not raised and properly preserved at the trial level and to which Goldfarb has never been given an opportunity to respond.