UNITED STATES of America,
Plaintiff,

v.

Joseph E. WOLF, et al., Defendants.

No. CIV–04–0037–HE.

United States District Court,
W.D. Oklahoma.

Oct. 18, 2004.

Hilarie Snyder, US Dept. of Justice, Washington, DC, for Plaintiff.

Thomas R. Cook, Cook Dunn & Associates, William J. Bergner, Nash, Cohenour & Kelley PC, Oklahoma City, OK, for Defendants.

### ORDER

HEATON, District Judge.

This case is before the Court on plaintiff's motion to hold the defendants in contempt for failing to comply with a previous order of the Court. A show cause hearing on the matter was conducted on Septem-

ber 8, 2004. After hearing the evidence and arguments offered by the parties, the Court concludes the motion for contempt should be granted in part and held in abeyance, pending further discovery, as to the balance. The Court further concludes it is premature, on the present record, for the Court to determine the issue of whether the various corporations have properly appeared by counsel in this case.[1] Any decision on that issue will similarly be held in abeyance pending further discovery.

Plaintiff moves to hold the individual defendants in contempt for failing to file corporate income tax returns on behalf of the corporate defendants.[2] In its preliminary injunction order of April 6, 2004, the Court ordered the individual defendants to file such returns within 60 days, or by June 5, 2004. [Doc. # 67]. In an order dated June 8, 2004, the Court granted the individual defendants an additional 60 days, or until August 3, 2004, to file the returns. [Doc. # 75]. Despite the defendants' knowledge of the Court's orders, no returns were filed.

■ The individual defendants essentially admit they are in contempt[3] but

assert, for the first time in this case, that they are unable to comply with the Court's orders to file corporate tax returns because all, or virtually all, of the corporations were sold in 2001 to a Texas company known as Nations Personnel, Inc.[4] *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) ("In a civil contempt proceeding … a defendant may assert a present inability to comply with the order in question."). Defendants claim that as of the date of the sale they were no longer officers of the corporations and no longer had the authority to file corporate tax returns or direct others to do so.

Based on the evidence and the argument of the parties, the Court finds as follows:

■ 1. *Louise Qualls and Eric Wolf— TSI Installers/Titan Management.* Insofar as the tax returns for TSI Installers and Erectors, Inc. and Titan Management, Inc. are concerned, defendants Qualls and Eric Wolf have not put forward evidence demonstrating a present inability to comply with the Court's order. *See Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1486 (10th Cir.1985) (noting "the de-

---

**1.** *On its own motion, the Court directed counsel for the corporate defendants to address the basis upon which he claimed to represent those defendants.*

**2.** *The corporate defendants include: Legion Enterprises, Inc.; A to Z Staffing Services, Inc.; Benefit Marketing, Inc.; Employer's Administrative and Payroll Services, Inc.; Global Staffing, Inc.; National Staffing, Inc.; Nationwide Staffing Services, Inc.; Professional Employer's Management, Inc.; Select Staffing, Inc.; SSI of America, Inc.; SSI of Bethany, Inc.; SSI of OKC, Inc.;SSI Personnel, Inc.; SSI Staffing, Inc.; Staff Specialties, Inc.; Summit Staffing Services, Inc.; Support Staffing Services, Inc.; Tecumseh Management, Inc.; The Corporate Direct, Inc.; The T.S.I. Group, Inc.; Titan Management, Inc.; Total Staffing Services, Inc.; TSI Builders, Inc.; TSI Installations, Inc.; TSI Installers and Erectors, Inc.; TSI Medical, Inc.; TSI of Peachtree, Inc.; TSI*

*Temps, Inc.; and Vontres Staffing Services, Inc.*

**3.** *Plaintiff meets its burden of proving contempt by clear and convincing evidence by demonstrating (1) that a valid court order existed, (2) that the defendants had knowledge of the order, and (3) that the defendants disobeyed the order. Fed. Trade Comm'n v. H.G. Kuykendall, 371 F.3d 745, 756–57 (10th Cir.2004). Plaintiff has met its burden in this case.*

**4.** *While defendants Joseph Wolf and Cecil Fisher previously asserted that they resigned their involvement in the corporations sometime in 2001, no defendant has ever asserted, either in their answers to the complaint or in their responses to the plaintiff's motion for preliminary injunction, that the defendant corporations were no longer owned by the individual defendants.*

fendant could avoid a contempt adjudication by showing through clear and convincing evidence that he was unable to meet the requirements of the injunction"). Indeed, both defendants testified at the show cause hearing that they had made no effort whatever to file returns on behalf of the corporations not involved in the 2001 sale. TSI Installers and Erectors, Inc. was not part of the alleged sale to Nations Personnel and was operating until roughly the date of the Court's preliminary injunction order. According to Eric Wolf, its nominal president,[5] its financial records are either in his garage or at his mother's house. Titan Management, Inc. was not formed until 2002 and could not have been part of a June, 2001, sale. Though the nominal president of Titan is Shelli Bunn, she is the fiancée and long time girlfriend of defendant Eric Wolf. In addition, although defendant Qualls is listed only as the bookkeeper of Titan, the evidence indicates both Eric Wolf and Louise Qualls effectively controlled, and perhaps owned, Titan as well. Both defendants suggest they lack the ability to prepare a tax return or the financial ability to hire it done. The Court is unpersuaded. Apart from its substantial concerns about the credibility of both defendants and their claims of financial distress, the Court notes an additional family member—Jeffrey Wolf—is claimed by defendants' counsel to have been involved in the management of the companies and in the hiring of counsel.[6] As Jeffrey Wolf is a CPA, the Court concludes defendants Eric Wolf and Louise Qualls have ready access to an accountant capable of preparing necessary returns for them. Lacking any plausible basis for non-compliance with the Court's prior order to file tax returns for TSI Installers and Erectors Inc. and Titan Management, Inc., the Court finds Eric Wolf and Louise Qualls to be in civil contempt of court.

■ 2. *Louise Qualls and Eric Wolf— Other companies.* The appropriate disposition of plaintiff's motion for contempt is considerably more difficult as to the remaining companies with which Ms. Qualls and Eric Wolf were (or perhaps still are) involved. At the hearing on the government's request for a preliminary injunction, these defendants resisted (through counsel—they did not appear personally) only on the basis that (a) the various companies were defunct and (b) the government had more appropriate remedies available to it than a preliminary injunction. There was no suggestion at that hearing that the companies had been sold. Subsequent to the Court's entry of the preliminary injunction directing the filing of tax returns, these defendants filed a request for an extension of the time for filing those returns in which they asserted, for the first time, that most of the companies had been sold in 2001.

The evidence at the contempt hearing included defendants' testimony that Legion Enterprises and its subsidiary companies, plus The T.S.I. Group and its subsidiaries, were sold to Nations Personnel in 2001. There was evidence that all the individual defendants in this case were required to resign their positions as officers

---

5. *The testimony indicated Eric Wolf was president of the company, but he claimed to know virtually nothing about its operations—at least the "book" part. Wolf's mother, defendant Qualls, was nominally the bookkeeper but appears to have been at least one of the de facto officers of the company.*

6. *At the contempt hearing, defendants' counsel advised he was hired to represent the corporate defendants by Eric Wolf, Louise Qualls, and "a CPA that worked with them." Transcript of Show Cause Hearing, p. 29. Mr. Bergner's affidavit, submitted with his post-hearing brief, identifies Jeffrey Wolf as among those hiring him. The yellow pages of the local phone book identify Jeffrey Wolf as a CPA.*

at roughly the same time. Nonetheless, the evidence also suggested that defendants Wolf and Qualls continued to operate and manage the businesses (or at least the then-active businesses) after the "sale".[7] Eric Wolf signed IRS forms (Form 2848) as "president" of at least five of the "sold" companies in November, 2001, some five months after the alleged sale. Further, although Ms. Qualls and Eric Wolf claim to have had no managerial authority or responsibility after the "sale", they nonetheless claimed some residual authority to hire counsel on behalf of the "sold" corporations to deal with the IRS and, when this suit was filed almost three years later, to hire counsel on behalf of the "sold" corporations.[8] The government asserts the evidence supports a conclusion that the sale was a sham. Although the Court is unable to draw that conclusion on the present record, the evidence does strongly suggest that these defendants assert authority over the affairs of the "sold" corporations when it suits their interests and deny that authority when it does not.

Although tempted to simply conclude that defendants have failed to establish their defense of lack of ability to perform and enter a finding of contempt, the Court concludes it should not do so at this time. Despite these defendants' lack of credibility, it nonetheless appears entirely possible that they may not have the legal authority to file a return on behalf of these corporations even if the Court somehow coerced

them into doing so. Further, given the apparent state of the wreckage of the various corporations, sold or not, it is not clear that even a willing defendant could necessarily generate a meaningful return. *See, e.g., Rylander,* 460 U.S. at 757, 103 S.Ct. 1548 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). The Court concludes the most appropriate action at this point is to defer ruling on the remaining aspects of the contempt motion as to Qualls and Eric Wolf until a more complete record is available and established.[9]

3. *Cecil Fisher and Joseph Wolf.* The evidence as to Cecil Fisher and Joseph Wolf is subject to many of the same uncertainties as that involving Eric Wolf and Louise Qualls. They served as President and Vice President of Legion prior to the "sale" and perhaps thereafter. However, at least Mr. Fisher and Joseph Wolf have maintained a reasonably consistent position throughout these proceedings, as they asserted at the preliminary injunction hearing they were no longer affiliated with Legion or its subsidiaries after 2001. Nonetheless, the evidence indicates they continued to play a role in the operations of the companies after the "sale" in various ways. In November, 2001, Mr. Fisher purported, as "Acting President", to designate a representative of the companies to deal with the IRS.[10] Both of them acted on behalf of the companies into 2002.

---

**7.** *Defendant Qualls testified that she did not manage the businesses after the sale, but only continued doing payroll for them through her separate company. Given her relationship to other family members through which she exerted control and the manner in which these defendants conducted business, the Court is unpersuaded by her testimony.*

**8.** *The post-hearing brief of defendants Qualls and Eric Wolf asserts they "continued to operate the companies even after the sale in May 2001, just as they had before the sale." (Brief,*

*p. 1). It further asserts they "feel they had the authority to hire counsel to defend them and the companies ...." (Brief, p. 2, emphasis added).*

**9.** *In part, the Court's deferral of a decision is due to the "sale" defense having been asserted very late in the proceedings, when the plaintiff had little opportunity to discover and present evidence as to the bona fides of the sale.*

**10.** *IRS Form 2848s were signed by him for at least twelve of the Legion-related companies.*

If, in fact, these defendants have no *current* connection with or authority over Legion or its subsidiaries, there is no reason to have them file a return with the IRS or for this Court to attempt to force them to do so. If, on the other hand, the "sale" really was a sham or other facts exist showing a continuing role or authority, the result may be different. A decision should await a fuller development of the underlying facts and circumstances.

4. *Appearance by the corporations.* The Court previously raised the issue of how, if the various defendant companies were sold in 2001 and the various officer positions given up, defendants Eric Wolf and Louise Qualls (or others associated with them) could have had the authority to hire counsel in this action on behalf of the corporate defendants. It further questioned whether the pleadings filed on behalf of the corporations should be stricken on that basis. However implausibly, defendants Eric Wolf and Louise Qualls continue to insist they have the authority to hire counsel on behalf of the various corporate defendants for this case.[11] At the same time, the plaintiff asserts the "sale" was a sham and that the individual defendants retained control of the companies sufficient for them to make decisions regarding the defense of this litigation. Notwithstanding the agreement (for obviously different reasons) of the parties, the Court remains unconvinced that Mr. Bergner in fact has the authority to represent the corporate defendants (other than TSI Installers and Titan) in this case.

There is no evidence that Eric Wolf, Louise Qualls, and/or Jeffrey Wolf had actual authority to hire counsel for this case on behalf of the corporations. Apart from the testimony suggesting the individual defendants were left in some sort of operational control of the companies in the year or so after the "sale" of the companies, there is little upon which to base a finding of implied agency or agency by estoppel. The actions of the individual defendants cannot create agency authority in themselves. Further, plaintiff's counsel suggested at one point that Nations and/or its subsidiaries, potentially including the "sold" companies, is in bankruptcy. If so (and assuming a sale really occurred), there is presumably a trustee or a debtor in possession somewhere who has a stake in the outcome here and who actually has the right to control the defense of these proceedings on behalf of the corporations. Additionally, the automatic stay of proceedings created by the Bankruptcy Code may limit or impact at least part of the relief sought here by plaintiff. *See* 11 U.S.C. § 362.

 It may well be more convenient for both the plaintiff and defendants Eric Wolf and Louise Qualls to insist Mr. Wolf and Ms. Qualls have the authority to hire counsel for the corporations.[12] However, the Court is not bound to defer to the positions of the parties in this regard and may always inquire into the authority of one of its officers to represent the interests of a party in this Court. *See Pueblo of Santa*

---

11. *These defendants could not recall the name of the persons with whom they dealt in connection with the "sale" to Nations and have apparently had no contact with Nations or its principals in years. Further, their efforts exerted on behalf of the defendant corporations have apparently been directed at getting the corporations to confess judgment as part of some broader settlement, relieving the individual defendants of their potential liability.*

12. *Convenient for plaintiff in that it at least gives the government someone to deal with in the always-in-motion shell game the defendants appear to have pursued. Convenient for Qualls and Eric Wolf in that they can attempt to bargain away the corporations' positions in an attempt to limit their own liability.*

*Rosa v. Fall,* 273 U.S. 315, 318, 47 S.Ct. 361, 71 L.Ed. 658 (1927) ("[T]he trial court ... has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear."). Here, the assertion of a 2001 sale of the corporate defendants, and the impact of that alleged sale on the potential contempt liability of the other defendants, has only recently been raised. Presumably, the plaintiff has not had the opportunity (or, until recently, the need) to inquire into the background and details of the alleged sale. Certainly, the record before the Court does not include the sorts of written documentation that would ordinarily attend the sale of multiple businesses and which would at least limit the need to guess at what actually occurred. These considerations, plus the possibility of third party interests not represented in fact by the present players, convince the Court it is premature to attempt to reach a final decision on whether those who hired Mr. Bergner on behalf of the corporations actually had the authority to do so. Accordingly, the Court will defer a decision on whether Mr. Bergner in fact has the authority to act on behalf of the defendant corporations, with the expectation that the plaintiff will pursue the discovery necessary to resolve the issue in a definitive way prior to any substantive decision impacting the corporations.

5. *The actions of Mr. Bergner.* The Court previously directed Mr. Bergner to address his own conduct in entering an appearance for the corporate defendants in light of the evidence offered that they had been sold three years ago and that the individuals who purportedly hired him were no longer corporate officers. He essentially responds that the individuals who hired him had apparent authority to do so,

suggesting they were "local managers" even after the sale who had the authority to hire counsel, that they did so in connection with dealing with the IRS, that the IRS did not object, and that those events somehow created continuing apparent authority to hire lawyers in this case.

The immediate question, of course, is not whether Mr. Bergner had the authority to deal with the IRS pursuant to the various Form 2848s—the question is whether he has the authority to speak for the corporate defendants in this case. It strikes the Court as a stretch to suggest the actions of the "new" owners in 2001, by leaving some or all of the individual defendants in operational control of the companies for some period of time, created apparent authority in those individuals to hire corporate counsel three years later. The fact that the IRS may not have objected to Mr. Bergner's authority in prior dealings with him is of no moment,[13] as the IRS is in no position to give anyone actual or implied authority to act on behalf of the corporations. Knowing of the "sale" of the companies three years before, knowing of the resignation of his individual clients as officers of same, knowing of the several years of lack of contact with the "new owners" and knowing of at least the rumors of bankruptcy by them, it seems a considerable understatement to say that counsel should have at least inquired into the question of whether those purporting to hire him on behalf of the corporations had the authority to do so. Yet Mr. Bergner apparently did not inquire and states it never occurred to him to do so.

For present purposes and pending further development of the authority issue per the above discussion, the Court will

---

**13.** *It is unclear what the IRS's position was in this regard. Mr. Bergner states his authority was never questioned by the IRS, although some of the Form 2848s were signed by Cecil Fisher as "Acting President". Mr. Fisher testified the Service "kicked back" several returns due to such a signature.*

assume counsel's error was, at most, a lack of diligence in failing to ask and answer an obvious question.[14] As such, no further action is warranted at this time.

Based on the foregoing, the Court orders as follows:

a. Pursuant to the Court's findings, plaintiff's motion for citation of contempt is **GRANTED** as to defendants Eric Wolf and Louise Qualls. Those defendants are ordered to file the previously ordered tax returns of TSI Installers and Erectors, Inc. and Titan Management, Inc. by **December 1, 2004.** Absent compliance, there is hereby imposed a **monetary penalty of $250.00 per day, beginning December 2, 2004,** applicable to each such defendant, for each day thereafter until the returns are filed. The plaintiff is directed to advise the Court by **December 10, 2004,** of the state of the defendants' compliance with this order.

b. Plaintiff's motion is otherwise held in abeyance pending further discovery. Plaintiff is granted leave to conduct discovery into the matter of whether a sale of the remaining corporate defendants took place in 2001, and, if so, what affect such a sale has with respect to this litigation. Plaintiff is granted until **January 18, 2005,** to conduct such discovery[15] and report back to the Court on whether it intends to proceed against the corporate defendants in question.[16] Defendants shall file their

response to the plaintiff's report within **10 days** thereafter.

**IT IS SO ORDERED.**

---

**14.** *If, in these circumstances, counsel pursues settlement discussions involving a confession of judgment as to the corporations he claims to represent, in return for a release of liability as to his individual clients, particular attention to the duties referenced in Rules 1.7 and 1.13 of the Oklahoma Rules of Professional Conduct would appear wise.*

**15.** *The parties are directed to confer as to the additional discovery required to resolve the is-*

*sues referenced in this order and in the case generally.*

**16.** *The Court assumes the plaintiff will continue to evaluate whether, in light of the practical and other difficulties involved in this case, pursuit of corporate tax returns via injunctive relief is the most appropriate way to vindicate its interest in the enforcement of the tax laws and collection of taxes due.*